The opinion of the Court was delivered by
Parsons, C. J.
[After stating the facts from the report of the judge who sat in the trial, and the papers referred to therein.] At the trial, the plaintiffs insisted that the defendant should be holden to prove Barker’s debt, and the judge directed otherwise (a). The defendants also offered a witness whom the judge rejected as interested. These points are not before the Court, for it is agreed that a verdict shall be entered for either of the parties, according to the opinion of the Court on this question, whether the plaintiffs have, from the facts stated, proved their property in the ship and cargo or not.
As to the return cargo, which was replevied, that may deserve some further consideration. But the merits of this cause, as to the ship, depend on the validity of the transaction, as it relates to the creditor Barker, who was not a party, nor assenting to it; for if the bill of sale relied on by the plaintiffs is in law fraudulent as to creditors not parties nor assenting to it, the plaintiffs must fail in their action.
That the deed of conveyance should be valid in this case, it must have been made for a valuable consideration, and with good faith. Let us first look at the consideration. The grantors make the deed with honest intentions, but they receive no consideration for it; they have parted with all their estate of every description, without any estimate of its value, and they do not even obtain in consideration the discharge of a single debt. It is true that a conditional release is executed on the same day ; but it depends upon the further conduct of * the grantors themselves, to ob- [ * 153 ] tain any benefit from this release. (b)
In a case of this kind it is incumbent on the grantees to show a *114 valuable consideration, and they have failed. But from the facts agreed, the presumption is, that the property conveyed was of much more value than the debts due to the grantees, and to the endorsers and sureties of the grantors. For the admission is, that the plaintiffs have not received more than enough in cash for the payment of these debts; whence we ought to conclude that they have already received enough for these purposes; and there is a surplus property conveyed to the value of the ship Mac and her outward-bound cargo of cotton, (a)
To have established a valuable consideration, there ought to have been proved a fair and just value of the property conveyed, so that its adequacy might be apparent.
But was this conveyance bond fide 1 Was it made with honest intentions expressed in the contract, of at least not intentionally omitted, and for purposes for which the law will authorize an insolvent debtor to convey all his effects ? It purports to be made for the benefit of the endorsers and sureties of the grantors, and for the grantees, to secure their debts. But it is evident that the intent of the parties went much further, to compel the discharge of the grantors from all their debts by locking up from every creditor, who would not discharge them, every part of the estate of the grantors, (b) And it was not enough for a creditor to entitle himself to a part, to release his debtors; but he must be content to have his demands settled, not by a jury or impartial arbitrators, but by the plaintiffs themselves, who have an interest to lessen the amount of all the debts due but their own. (c)
Does the law allow an insolvent debtor to make this bankrupt law for himself? By our law a debtor’s property * is liable [ * 153 ] to attachment by any creditor; and, on the other hand, a debtor may prefer any one creditor to another, by paying his debt, either in cash, or by conveying so much of his estate as will be adequate to the payment. But the creditor must be a party, or assenting to this payment or conveyance. If he be not, nothing *115 passes to him, and nothing passes from the debtor, and his estate, intended to be conveyed, remains liable to attachment by any other creditor, (a)
But it has been argued that a creditor, to whom the conveyance is made, must be presumed to assent, or he may afterwards assent. We cannot always presume that he will assent, and especially on the condition of releasing the whole debt on receiving a part; and the present case proves that one creditor did not assent. A creditor may afterwards assent, and then he may be bound by his assent; but until his assent, the property remains the debtor’s, so far as to be liable to the attachment of another creditor; and if the property does not pass by the conveyance when executed, it can never after pass by virtue of such conveyance, so as to defeat an intervening attachment by another creditor. If this were not law, great mischiefs would arise. The conveyance may be made to the use of a creditor beyond sea; and how long must another creditor wait, to learn whether or not an assent is given ? And the insolvent grantor may in the mean time dispose at his pleasure of the property so conveyed to any person ignorant of the prior conveyance. (b)
It is, however, argued, with much ingenuity, that the deed, in the present case, conveys, according to the intent of the parties, a trust estate which immediately vests the property in the trustees, so that no legal interest remains in the grantors liable to attachment.
We admit that an insolvent debtor may, with the assent of his creditors, convey an estate in trust for the * pay- [ * 154 ] ment of their debts bond fide, and for a valuable consideration. But we do not admit that an insolvent debtor can convey his estate in trust to pay his creditors without their assent.
Let it be remembered that in this state we have no Court, which can compel a discovery, or an execution of a trust. If such a trust estate were allowed, the creditors would be without remedy. They could not attach, because the estate passed to the trustees; they could not compel an execution of the trust, if they had evidence of of it; and what action could they maintain at law, not being in possession of, or parties to the deed of trust ?
But if they had evidence of the trust, and, deviating from the *116 rules of the common law, we should allow the creditors to maintain a special action of the case against the trustees, it would be inconvenient, if practicable, to make out their claim to any ascertained portion of the property conveyed before a jury. It is, therefore, our opinion that the policy of the law providing for attachments, and not providing any remedy in equity against the trustees, prohibits the establishment of a trust estate created by an insolvent debtor for the benefit of his creditors not parties to it. We would not be understood as giving an opinion that an insolvent debtor cannot convey an estate in trust to pay particular creditors who are assenting and parties to the conveyance; for we perceive no difference, as to the effect on other creditors, whether the estate be conveyed directly to the particular creditors, or with their assent to others in trust for them. And if they have no convenient remedy to compel an execution of the trust, yet volentibus non Jit injuria, (a)
It has been further argued that, as an insolvent debtor may collect his effects within his dwelling-house, either reduced to money or not, and pay any portion of them to any of his creditors, [ * 155 ] and on what terms he pleases, *so he may invest these effects in others for the same purposes.
But it should be considered that this protection of his effects from attachment, is not the design of the law, but an incidental protection resulting from the provision of the law that every man’s house is his castle. And if his effects are found without his castle, they may be attached ; and even in his castle an attachment would be good, although the party might be punished as a trespasser for invading the castle. (b) This protection cannot, therefore, be extended to a conveyance in trust of goods not within the debtor’s dwelling-house.
It has also been argu.ed that it does not appear that the clear and unencumbered value of the property conveyed exceeded the amount of the debts due to the grantees, and that the moneys raised to pay the endorsers and sureties were the proceeds of the estates previously mortgaged to them; and therefore the conveyance may be good to the grantees, who, if they admitted other creditors, would pay them out of their own funds.
There are two objections to this argument. The intent of the parties, apparent from the deed, was not the true intent, which was the pro rata payment of the other creditors on their discharging the grantors; the deed therefore was on a confidence not expressed, for their own benefit, reposed by the grantors in the grantees. We say, *117 for the benefit of the grantors, because they expected in this manner to obtain a discharge from their debts, on paying a part of them, (a) Another objection is, that it does not appear, but that the value of the property conveyed did exceed the amount of the debts due to the grantees; and it lies with the plaintiffs to show that it did not. (b) But the presumption is the other way. For the plaintiffs have received cash enough to pay the endorsers, sureties, .and grantees, without crediting the ship Mac and her cargo, which were included in the conveyance. This cargo was cotton, as appears *by the statement of the factors [ * 156 ] of the grantors in Liverpool, and was by them appropriated to pay them their debts due them from the grantors. If the ship had put into Portland in distress, or for any cause, after the conveyance, the plaintiffs would have received this cargo; and it does not appear that those factors, who had the benefit of it, were either endorsers or sureties, and certainly they were not among the grantees.
Upon the whole, we are satisfied that the title-deed set up by the plaintiffs to the ship Mac, is fraudulent and void as against Barker. This opinion is agreeable to the course of decisions on this subject in the Courts of this state.
The return cargo comes under a different consideration. It appears that it was not purchased with the proceeds of the outward cargo, nor on the credit of the grantors, but on the credit of the plaintiffs, to whom it was shipped. The plaintiffs must, therefore, pay for it. If they pay for it out of their own moneys, they ought to have the benefit of it. If they pay for it out of the moneys of the grantors received from the effects conveyed, for those moneys must they account as trustees, if, as is our opinion, the conveyance was void; and they ought not to account for those moneys, and for the cargo purchased with them; for then they would substantially be held to account twice. It is, therefore, our opinion that the salt and coal composing the return cargo, are the property of the plaintiffs.
The verdict must be amended conformably to the agreement of *118 the parties; so that the property of the ship Mac may be found not to be the plaintiffs’, and nominal damages must be assessed for the defendants; and that the property of the cargo may be found to be the plaintiffs’, and nominal damages be assessed for them, (a)

 Vide Damon vs. Bryant, 2 Pick. 411.

 It is no objection to the release that it contains the clause referred to, which in itself is extremely reasonable; and none but the grantor could have any right to object to it. There certainly was, therefore, a consideration for the conveyance.

а) The only questions that could arise in the case were, whether the just value of the property conveyed at the time of the conveyance exceeded the amount of the debts owing to the grantees, and what they had thereupon assumed to pay; and if so, whether this excess was such as, under the circumstances, to amount to evidence of an intent, on the part of the grantors, thereby to defraud their creditors.

 This is not apparent from the deeds, and there is no other evidence of such intent, unless it may be inferred, from the amount of the property conveyed, if any over and above what was sufficient to pay the debts mentioned or referred to in the deed of assignment to be paid.

 This does not apply to the deed of transfer or release, but only to the instrument voluntarily executed by the grantees, without any agreement with the grantors tq that effect. But if it were otherwise, the objection is one which no creditor could make who assented to the arrangement, for volenti non jit injuria ; and certainly no others could object that any were willing to dischai ge their debts on these conditions.

 These remarks seem to be inapplicable, if no other creditors than those referred to in the conveyance were originally intended to be secured ; for here these creditors were parties, and assenting to the payments and conveyance.

 This argument seems to go on the ground that the letter of attorney, of April 11 th, was a part of the deed of grant, and originally contemplated by the grantors, and that they were parties thereto, which is denied in the trustees’ answers. If it had been so, it could not, per se, have rendered the conveyance void. The property would have passed from the debtor immediately, and vested in the trustees for the benefit of such creditors as might elect to comply with the conditions, unless, from the terms of the 'deed and the amount of property conveyed, actual fraud might have been inferred.

 This objection, if it were valid, will not hold now, since our Courts have jurisdiction in equity in cases of trusts arising under deeds. If there be no fraud, the property passes effectually, and assent of the creditor afterwards is sufficient.

 This is not so. See note 1. to Semaine vs. Gresham. — Mr. Metcalf s edition o* Yelverton, page 2a.

 If the property conveyed to the grantees was not more than enough to pay them, and what they, with the assent of the other creditors, had agreed to pay, and the grantees had given a release of their whole demands, it could hardly be an objection, even if it was tacitly understood, between the grantors and grantees, that the grantees, in consideration of the conveyance, should admit as many creditors to participate with them as might be willing to comply with the terms referred to. This is nut such a confidence not expressed as would constitute fraud.

 Quaere. Does not the burden lie upon the party who alleges fraud, which is not 6o be presumed lo show that by reason of such excess the conveyance was fraudulent ?

 Vide Halsey vs. Whitney, 4 Mason, Rep. 206., and the cases there cited.