The following opinion was delivered
By Mr. Justice Nelson.
It was urged on the argument that the parties requisite to give validity to the deed of assignment never executed it nor assented to it. It appears from the answer of George Freeborn, the assignee, that he took possession of all the real and personal property in pursuance of the assignment, and thereby accepted of the trusts committed to him. There can be no doubt, upon general principles, he would be bound to execute them in every particular as effectually as if he had entered into an express ‘covenant to do so. 20 Johns. R. 338. 9 Mass R. 486. 9 Wendell, 618. An assignment by a debtor to a stranger of all his real estate, in trust to pay his debts, without any express consideration, might not formerly have transferred the title of the property according to the laws of this state, as there would be no consideration to operate under the statute of uses; and if so, the *promise of the assignee, either express or implied, to fulfil the trust, would fall with the title, as there would be no consideration to support the promise ; but such an objection cannot now exist, as by the revised statutes feoffments with livery of seisin are abolished, and deeds of bargain and sale and of lease and release are turned into grants, and are to operate as such. 1 R. S. 738, § 136, 142. No consideration was necessary at common law to give effect or operation to such instruments of conveyance. By the statute, grants take effect from the delivery of the deeds, so as to ves't the estates intended to be conveyed, and the rules previously in force, in relation to the delivery of deeds, apply to them. Id. § 13, 137. Besides, by the 55th §, p. 728, it is provided that "express trusts may be created for certain purposes, one of which is to sell lands for the benefit of creditors, and the 60th f p. 729, provides that every express trust, valid as such in its creation, except when otherwise provided by statute, shall vest the whole estate in the trustees, in law and equity, subject only to the execution of the trust. The persons for whose benefit the estate is created, take no estate or interest in the lands, but may enforce the performance of the trust in equity. The next section secures to the person creating the trust, the power of declaring to whom the lands shall belong in the event of a failure, or termination of it. For the reasons above sta *250 ted, without any consideration, the title to the real estate of the assignor would pass to the assignee, by virtue of the revised statutes, either as a grant, or as a statute trust by delivery and acceptance of the deed of assignment, and would be held subject to the trusts therein specified.
Neither is it now necessary for a creditor to be a party to or to assent to such conveyance to give effect to it, as has been held by some authorities; for it was so held only on the ground of supplying a consideration to support the deed, Roberts on Fraudulent Conv. 429, and cases cited. It has been held in Massachusetts that all the creditors must assent, or be parties to the assignment, in order to give it validity, and that attachments levied before such assent bound the property. 5 Mass. R. 144. 6 id. 339. 6 Pick. 350. But it will be seen, on looking into the earlier cases there upon this point, and in which it was established that the chief ground of such determination *was the want of a court of equity to enforce the execution of the trust in behalf of the creditors, and a doubt or at least difficulty as to a remedy at law. Chief Justice Parsons, in Widgery v. Haskell, 5 Mass. R. 144, after an examination of the question, says, it is therefore our opinion, that the policy of the law providing for attachments, and not providing any remedy in equity against the trustees, prohibits the establishment of a trust estate by an insolvent debtor for the benefit of his creditors not parties to it. It is clear, both in England and in this state, that the assent of the creditors is not essential to give effect to these assignments. Roberts on Fraud. Conv. 434, 5. 4 Johns. Ch. R. 529, and cases there cited. If the conveyance of the property is directly to the creditors, then no doubt it is material to show their assent to it, as it requires the agreement of two parties to make a contract; but where it is made to a trustee for the benefit of creditors, the legal estate or title to the property may pass to him without their assent, so as to prevent a judgment creditor from acquiring a lien, if real, by his judgment, or if personal, by his execution, unless upon the ground of fraud. There is no defect of legal title in the assignee or trustee, and a court of equity will then enforce the execution of the trust. 2 Johns. Ch. R. 307, 8. 4 id. 529. 6 Ves. 662. 18 id. 99. The case of Jarrad v. Lord Lauderdale, 3 Simons’ R. 1, was much relied on to establish this point in favor of the appellant; but in my judgment it is an authority against him. That case was put upon the principle of the case of Walwyn v. Coutts, 3 Meriv. 707, by Vice Chancellor Shadwell, the report of which contains only the fact and the order of Chancellor Eldon ; but Mr. Shadwell was counsel in the cause, and is therefore enabled to state with more confidence the principle deducidle from it; and that is, where there is an actual settlement.made for vesting an estate or stock in trustees for volunteers, there the legal character being complete, the persons who have the legal character are trustees for the volunteers, who may claim as cestui que trusts against the trustees under the deed; and that where, without the privity of any one, without consideration, and without notice to any creditor, a person makes a disposition between himself and trustees, for payment of debts, he is merely *directing the mode in which his own property shall be applied for his own benefit; in other words, the arrangement by the debtor is made without communication with any one, either trustee or creditor, and merely for his own convenience, in which no other person has acquired any vested interest; and therefore it cannot be enforced against him or his trustees, and he may alter the trusts as he pleases, or otherwise dispose of the property. The same principle will be found in Pulvertoft v. Pulvertoft, 18 Ves. 99. These cases turned, not upon the question of fraud between parties as regarded creditors, or any thing of the kind, but upon the question of legal *251 title or vested interest in relation to the property in question; and even upon the principle as stated by the vice chancellor, there cannot be a doubt but that the assignee in this case took the legal title to the property, as well as the actual possession, and that the vice chancellor would have enforced the trust for the benefit of the creditors. Independently of every thing that has already been said on this part of the case, the nominal consideration of one dollar, or the fact that the assignee was a creditor, as appearing on the face of the deed of assignment, would be sufficient to transfer the legal title to the property and vest it in him. The amount of the consideration was never material for this purpose, and it seems to be well settled that the relation of debtor and creditor between the parties, and the legal consequences of the assignment, constituted a sufficient consideration as between them. Roberts on Fraud. Conv. 431, 2.
It was said that the preferred creditors, of whom the assignee was one, were not creditors in judgment of law; and if so, no doubt the assignment would be void as making a mal-appropriation of the property. They were sureties for the insolvent, either as accommodation makers or endorsers of promissory notes which had been negotiated, and in the hands of bona fide holders, to the amount of $9950. The trusts are to pay these debts to the holders of the notes, and operate in the double aspect of indemnifying the sureties, and discharging the debts. As I understand the law, persons liable on existing or even future responsibilities for a failing debtor, are as much entitled to indemnity against the same, and to be ^preferred as creditors in the more strict sense of that term. 1 Burr. 474, 81, 2. 2 Johns. Ch. R. 304. The trust in question goes beyond this principle, because it indemnifies the surety by pledging the property to pay the debt, and both the holder and the surety have an interest in the execution of it, which either could enforce in equity I have thus far examined the points in the case without regard to the question of fraud, and perceive nothing upon the face of the assignment, or in the bill and answer independent of that question, to interfere with its operation and effect according to its terms.
The next and only important question in the case is whether upon the bill and answers the assignment is fraudulent and void as to creditors, as the law is understood in this state. Both answers, after setting forth the assignment and the facts and circumstances attending it, deny all and every fraudulent intent to delay, hinder, or defraud creditors ; and as no replication is filed, and the case is submitted on bill and answer, every material allegation in the latter must be admitted to be true ; and it seems to be supposed by the counsel for the respondents that it is thence conclusive upon the complainant, under the provisions of the revised statutes, so far as this question is concerned. The statutes, 2 R. S. 137, § 4, provide that the question of fraudulent intent in all these cases shall be deemed a question of fact and not of law ; and it is supposed that its determination belongs to the jury, and not to the court; and that fraud in law, a question which belonged exclusively to the court, is abolished ; and that the denial of the fraudulent intent is equivalent to a verdict against the party alleging the fraud. All this may be safely admitted to the counsel as a sound construction of the statute, without his advancing a step in the argument, in support of the position above assumed. The question of fraudulent intent is undoubtedly made by statute a question of fact; and when before a tribunal in which questions of fact are to be tried by a jury, must be found by the jury. But in a court of equity these questions may be, and usually are determined by the court; and it necessarily follows that there the fraudulent intent must be thus found. Had this case been in the supreme *253 court, and all the facts as they appear on the bill and answers *had been disclosed at the circuit by competent evidence, it would no doubt have been the province of the jury to have determined the question under the direction of the law and their verdict might have been conclusive ; but if contrary to the law or fact, the court would be bound to set it aside. In a court of equity, the chancellor must in the same way determine this question upon all the facts in the case before him, whether upon bill and answer or pleadings and proofs. He must come to such a conclusion as a jury would be bound by the law to find. It could never have been intended by this statute, nor could it be endured in principle or practice, that the verdict of the jury should be conclusive if against law and evidence, or that the answer of a defendant, disclaiming a fraudulent intent, though it admits facts from which such intent is a necessary or legal inference, shall still be conclusive upon the point. Carrying out this doctrine to its legitimate consequences, if it had appeared by this assignment that the debtor had reserved an annuity to himself out of the property to any amount whatever, or that it contained any other provision which of itself was conclusive evidence of fraudulent intent, according to the law of the land ; still, the answer denying such intent, must be conclusive in his favor. It may be said the complainant should file a replication and go to his proofs; but what proof could he hope to make, stronger than that which would already appear ? Indeed, upon the construction contended for, it is only necessary to set forth in the deed of assignment all the acts of fraud designed to be committed, so that the defendant, in the answer may be enabled, in the face of them, to deny the fraudulent intent, and he is out of the reach of the power of a court of chancery, for it is too absurd to suppose that any proof of the objectionable acts of the parties could be made stronger or more effectual than those proved by the deed of assignment, or by the admission under oath in the answer. The true doctrine on this subject, notwithstanding the statute, I apprehend, is, that if there is any provision in the deed of assignment, or any fact admitted in the answer, which is per se fraudulent according to the law of the case, it is so, the denial of the fraudulent intent, to the contrary nowithstanding; that fraud in fact is a question compounded *of law and fact, which is to be found by the jury in a court of law, under proper direction duly observed by them, and may be by the chancellor in a court of equity; that any set of facts, or any intention, to be fraudulent, must be a violation, of some principle of law since the revised statutes as well as before ; and when the violation of the principle is admitted by the admission of the facts, the intent is the natural and necessary consequence, and the denial is senseless and idle. “ Where there is no law, there is no .transgressionand where the law exists and the transgression is admitted, the intent follows as a legal inference. The admission of facts which are per se fraudulent in judgment of law, are as much so and as conclusive upon the defendant as if he had in express terms admitted a fraudulent intent in his answer; and, in such a case, any subsequent disclaimer of such intent will not avail him. It will not be entitled to credit; neither is his disclaimer, after the admission of facts which are of themselves fraudulent against creditors ; for the legal intent, from these facts, is stronger than the mere admission of it subsequently denied.
There was a class of cases familiar to the profession, by which the acts of parties were pronounced fraudulent and void in law as against creditors, in the absence of any fraudulent intent, and under a concession by the courts that there was none. 3 Johns. Ch. Rep. 481. 8 Cowen’s Rep. 406. 4 Wendell’s Rep. 300. The doctrine of these cases was arraigned in this court in Jackson v. Seward, 8 Cowen’s Rep. 400, and all questions of fraud were sup *255 posed to be put upon the footing of a fraudulent intent by the decision in that case. The provision of the revised statutes making all questions of fraudulent intent a question of fact, and not of law, was no doubt intended to settle definitively, by enactment, the above litigated question, and all others of a like nature. Such is the effect of the note of the revisors to this section. Though the question in every case now must be one of intent and that of fact, all I contend for is, that such intent may or must be drawn, or fact found in a court of equity by the chancellor, in cases like the present; and if the weight of the evidence is such when applied to well settled principles of law in relation to these voluntary assignments by failing debtors, as to force *upon him the conclusion of a fraudulent intent, he is bound so to find, notwithstanding the denial of it in the answer; and .if a jury do not thus find, a court of law would be bound to set aside their verdict. This is no infringement of the statute ; if there is any thing in the argument for the respondents, it is not that the statute is violated, but the rule which makes every material fact set forth in the answer evidence for the party, when no replication is filed. The answer to this I have before given, to wit, that if the material facts are contradictory and irreconcilable, it belongs to the court to give eifect to those which are entitled to the greatest weight in determining the question.
This conclusion, then, makes it necessary to look into the provisions of the assignment and the facts admitted in the answer, in order to determine the question of fraudulent intent alleged in the bill and denied in the answer ; and as this intent is there denied upon the above principles, all admissions or facts not in themselves conclusive evidence of a fraudulent intent, are not material in this examination. We must therefore lay aside all circumstances called badges of fraud, which form links in the chain of evidence tending to establish the fraudulent intent, because this tendency is met and overcome by express denial. Every thing which might have been explained and rebutted by proof on the part of the defendants, if the complainant had chosen to have gone to the proof, we are bound to believe could, and would have been successfully explained or rebutted. Though the answer may admit many facts, in themselves suspicious, and which together, unexplained, would well authorize the presumption of fraud; yet, as they are capable of explanation, the denial of such conclusion asserts the ability to explain them ; and as the complainant has not chosen to put it to the test, it would be unjust and unreasonable to draw any other conclusion. We must, therefore, in this examination, reject the idea that this was a mere private arrangement by the debtor for his own benefit, and that the assignee is a trustee for him ; the omission of schedules at the time of the assignment; the fact that the trustee had paid none of the debts at the time of his answer; the manner in which he has conducted the establishment ; these, and all other like facts are not per se fraudulent. These are grounds, *and some of them very strong, from which to raise such a presumption; but all are subject to explanation, and the denial of such conclusion by the defendants repels the presumption, till an opportunity is given to them by the complainant to explain.
Are there then any facts admitted by the answer which are conclusive evidence of fraud, and incapable of explanation, upon principles of law, applicable to these assignments ? The whole of the property is devoted to the benefit of the creditors, giving a preference to a part of them. The debts of these are set forth particularly in the answer, and are admitted in the pleadings to be due, bona fide, and upon a full consideration. The trustee is bound to conduct and carry on the foundry establishment for the benefit of the creditors, to sell the manufactured articles, to work up and sell those unmanufactured, and in gene *257 ral to sell all the property as soon as it can conveniently be done, without sacrifice, and pay the debts in the manner prescribed. In all this I can perceive no violation of law, or of honesty and fairness, aside from the principle of preference which we are not at liberty to question. The establishment was large, and embraced the whole of the fund out of which the debts must be paid, if at all. It was a kind of property not readily convertible into money, and valuable and profitable only in the business in which it had been employed, and we cannot say that this provision in the assignment was injudicious, much less illegal. The chance of a sale might be greater and better by keeping the establishment in operation than in the abandonment of it. If this provision has been carried into effect according to its terms and spirit, and we are to assume it has been in this case, I am inclined to think it deserves commendation, rather than censure. It may be abused, and may have been intended for a cover, but this we cannot presume against the answer. From the nature of the business, it was impossible to fix any time within which the trust could be executed more judiciously than has been done. How long time it would require to sell the articles manufactured, and work up and .sell those unmanufactured, or the whole of the property, it was impossible to foresee. All convenient despatch was the best limit, and it put the *execution of the trust under the control of a court of equity, and with it the conduct and fidelity of the trustee.
The root of the vice in all these cases of voluntary assignments by failing debtors lies in the principle of preference. It affords the pretence for putting the property into the possession of a friendly trustee, and thereby may substantially secure to the debtor the control of it for a long time after the law presumes it to have passed from him, and when his own possession would be incompatible with its security. In Estwick v. Cailland, 4 T. R. 424, Lord Kenyon said, that “ it was neither illegal or immoral to prefer one set of creditors to another.” The soundness of this proposition loses some of its weight, when advanced in a case one would be apt to select above all others, to illustrate the reverse ; but I can well imagine one that would justify it. As a general proposition, however, the experience and observation of mankind must bear witness against it; and no one knew better than his lordship, and those familiar with courts of justice, how frequently the principle is perverted, and made subservient to the gratification of vindictive feelings and the foulest ingratitude, as well as injustice towards honest and confiding creditors. Much the greater portion of the cases that occur are no exception to these remarks. The principle is said to be ingrafted upon the position that a debtor may pay his debts in such priority as he pleases. To this there can be no objection in principle. But I would hold a debtor in failing circumstances, to pay, or give security to his creditor or creditors, directly, without the intervention of a trustee, who is often the creature of the debtor, without interest or sympathy, on behalf of the creditor. In this way the creditors would obtain the control of the fund the moment the debtor parted with it; and if favored creditors were preferred, they would be obliged to see to it that they took no more than was a fair security for their debts. They should not be permitted to justify their possession under the cover of trusteeship for others. Each creditor should be his own trustee. If inconvenient for creditors personally to execute the trust, they could appoint a trustee in their place. This modification would have the effect to give the possession and control of the fund, in the first instance, to the creditors, *or to a person appointed by them ; as the law now stands, the debtor may control the appointment, and a bill in chancery is often necessary 1 o enable the creditor to get possession of the fund. If, in the preference, actual payment *258 was required, or security directly to the person of the creditor or creditors, for his or their debts, and of course the immediate control of the property given, the great inducements to these fraudulent assignments would be removed. The hope of profit or control of the property by the debtor, after he parted with it, would be extinguished; and he could have no other interest in the preference, than to see that it was made. He might still gratify unkind or worse feelings against particular creditors, but he must, at the same time, deny himself the use of the fund of which he deprives them. Iwould be very willing to. apply the effect of these views to the assignment in this case could it be done in conformity to the existing law ; but the principle of preference among creditors is too deeply fixed in our jurisprudence, by a series of adjudications, and the implied sanction of the legislature, to be disregarded by the courts ; and within that principle, and the law, as applicable to the pleadings upon which the case is submitted to us, I am bound, however reluctantly, to sustain it.
The bill is framed with the single view of setting aside the assignment as fraudulent, and the application of the property to the payment of the judgments of the complainant; ■ and this is the only relief prayed for. It might have been framed with a double aspect: first, of setting aside the assignment; but if not, then accounting for the property as trustee, in behalf of the complainant and other creditors, with a prayer accordingly. Such a bill would have enabled the court below to have reached the trustee in this case, and required him to account; but neither the frame nor prayer of the bill will authorize it, nor do I understand it to be asked for in the case.
I am unable to discover the ground upon which the vice chancellor, or dismissing the bill as to George Freeborn, the assignee, imposed upon the complainant costs—or the confirmation of that part of the decree by the chancellor. It seems to me, with great respect, that if there ever was a case which justified *the creditor in calling the parties to the assignment into a court, upon the presumption of fraud, the complainant here was justified in filing his bill. The transaction was such as would naturally induce a creditor to call for explanation; the parties to it—the management of the property the same after the assignment as before—the sign of the elder Freeborn remaining upon the establishment—and even the terms of the assignment must necessarily have awakened suspicion and induced scrutiny ; and if this was the natural consequence, the proceeding is more the fault of the defendants than of the complainant. In Lupin v. Marie, 2 Paige’s R. 170, the complainant filed his bill, charging fraud in a purchase of goods, which was denied in the answer, and heard on bill and answer, as in this case ; and the chancellor, though he dismissed the bill,refused costs. He there said, “as the complainant had grounds to suspect fraud or collusion until the coming in of the answer, which fully explained the reason of the failure, I shall not charge them with costs.” The same principle will be found in the following cases in chancery : Nichol v. Trustees of Huntington, 1 Johns. Ch. Rep. 166, id. 582; Murray v. Ballou, 3 id. 147; Demarest v. Wynkoop, id. 422; Mackie v. Cairns, 5 Cowen, 575, 585, 586. We might not have entertained an appeal upon the question of costs, but as the case is before us upon other grounds, and our judgment is to be pronounced upon the whole matter, I am of opinion the decree dismissing the bill as to G. Freeborn ought to be reversed as to costs, and that, no costs should be allowed to either party on the appeal. I am therefore in favor of affirming the decree of his honor, the chancellor, as to the assignment, and reversing it as to the costs; allowing costs to neither party on this appeal.
On the principal question being put, Shall this decree be reversed on the *260 merits ? all the members of the court present, with but one exception, voted in the negative.
On the question being put as to the affirmance or decree of the chancellor in respect to costs, the members voted as follows :
*For affirmance—The President, and Senators Armstrong, Beardsley, Conklin, Dodge, Edwards, Fisk, Griffin, Hubbard,
MacDonald, Quacicenboss, Sherman, Tracy, Westcott—14.
For reversal—The Chief Justice, Mr. Justice Nelson, Senators Cropsey, Deitz, Gansevoort, Halsey, Lansing, Stower, Van Schaick—9. Whereupon the decree of the Chancellor was affirmed, with costs.