### ADAMS v. BEACH.

[See Adams v. Board of County Com'rs of Douglas County, Case No. 52.]

---

### ADAMS, (BENNETT v.)

[See Bennett v. Adams, Case No. 1,316.]

---

## Case No. 46.

### ADAMS et al. v. BLODGETT et al.

[2 Woodb. & M. 233;[1] 10 Law Rep. 69; 17 Hunt, Mer. Mag. 79.]

Circuit Court, D. Massachusetts. Oct. Term, 1846.

ASSIGNMENT FOR BENEFIT OF CREDITORS — CONSIDERATION—CONSENT OF CREDITORS — TRUSTEE PROCESS.

1. If the creditors of a failing debtor meet and agree to take an assignment of all his property towards paying the debts of all, and to have him continue responsible for any balance; and this is carried into effect by taking such assignment and possession of the property; it is valid against one of the creditors, who was not present, and brings a trustee process against the agent of the creditors, who has charge of the property.

2. The consideration is good, on account of the trust or contract, and the presumed assent of those creditors not expressly dissenting. But here it was clearly good, as the creditors actually assenting had claims exceeding in value all the property assigned.

3. A conveyance to a portion of one's creditors for a full consideration is valid at common law, and à fortiori, a conveyance to all of them.

4. Such a conveyance, the debtor agreeing still to be liable for the balance, is better for them than the insolvent law, and cannot be considered a fraud upon it. The insolvent laws have repealed the prior act in Massachusetts as to preferring creditors, but do not abrogate all conveyances like this at common law.

5. The present creditor can now come in and obtain his pro rata share of the property assigned for the benefit of all, or can, for the usual reasons, have the case put into insolvency under the statute, and the property thus distributed. But the proceedings already had are valid till this is done.

At law. This was an action of assumpsit [by Franklin Adams and others] against [Joseph F.] Blodgett, the principal, for $945.75, money had and on an account annexed. The principal was defaulted. One of the defendants, summoned in as a trustee, viz., F. Wells, denied having any goods or credits of Blodgett in his hands, and was discharged. The other, O. Libby, disclosed the following general facts in his answer to the interroga-

tories put by the plaintiff. Joseph F. Blodgett, the principal, failed in business, in the latter part of March, 1846, and a meeting of a large portion of his creditors was held, and several others not present agreed to follow the course which those present should agree on. They finally and mutually contracted, that J. Blodgett should give up to his creditors all his property and credit; and what of his debts these did not pay, he stipulated in writing to discharge at some future time. He further agreed, that his brother, H. Blodgett, to whom had been sold his goods and other interests in Robbinston, Maine, should surrender them and the amount collected on them, upon restoring to him the note executed therefor. It was further stipulated, that some one of the creditors, in behalf of all, should go to Robbinston and take possession of the property and effects of Blodgett there, and O. Libby was selected for that purpose. On the 2d of April, 1846, Blodgett gave to Libby a written order to have the charge of all his property, books, and notes, "at R. and elsewhere," and to dispose of them "for the benefit of all his creditors." Libby went accordingly and took possession of them, H. Blodgett conveying or assigning to him in writing all he had received, and taking back from Libby his note given therefor to J. F. Blodgett. O. Libby disclosed next, that he had collected from this property about $350 in potatoes. He further stated, that in September last, and since this suit was instituted, Libby and his partner agreed with J. F. Blodgett to release their debt to him, if his other creditors would do the same for $30, but the arrangement had not been completed.

The amount of the claims of those creditors, present or represented in March, 1846, was testified to be greater than all, which O. Libby had collected from the accounts and the value of the other property which he received. In answer to additional interrogatories, Libby says that he has collected, beside the potatoes, since the suit,......$350.00
for sale of goods in the store,....... 217.47
from wood, &c..................... 160.00
_____
$727.47

and has a sled worth $10, and barrels empty, 1400 in number.

On this disclosure, the plaintiff moved to charge Libby for the whole sum of $727.47.

P. W. Chandler, for plaintiff.
Brown, for Libby.

WOODBURY, Circuit Justice. The proceeding in this case, so far as regards Libby, the garnishee, is an equitable one. The form of the process is not a capias against the body, or an attachment of his property; but is a mere subpoena as in chancery to appear and answer. The plea, when appearing, is not one as at common law, but an answer to interrogatories, and usually verified by his

---

[1][Reported by Charles L. Woodbury, Esq., and George Minot, Esq. 17 Hunt, Mer. Mag. 79, contains partial report only.]

oath only, and his liability is not put to the jury except in peculiar cases, but tried by the court. If charged, also, it is on principles rather of equity than law, as it is on the ground that he holds something in trust for the debtor. and something which, on the principles applicable to trustees, he ought not to retain from the creditors of the cestui que trust; something, in short, which, ex aequo et bono. the special statute governing those proceedings considers that a creditor should be allowed to draw out of his hands. 2 Bac. Abr. "Customs of London," H; Evans v. Eaton, [Case No. 4,559;] [Wells v. Banister,] 4 Mass. 514; [Whiting v. Earle,] 3 Pick. 201; [White v. Jenkins,] 16 Mass. 62. The chief or leading question then here is, whether Libby holds any such property of Blodgett— property which he ought in justice as well as law to surrender entirely to this plaintiff, as one of the creditors of Blodgett? I am very readily conscious of many cases somewhat like this, where property ought to be thus surrendered or accounted for to one creditor. Such are several of those cited at the bar for the plaintiff, and chiefly resting on some fact, that the prevailing party then was prior in time in making his attachment; or the other party in possession had been guilty of fraud.

In an analysis of the principles involved in those cases, I apprehend they will all be found to contain some important elements which do not exist here, and which rendered it illegal or inequitable, there to let the property remain in the hands of the respondent. Thus if the plaintiff made his attachment before the conveyance was completed, the rule, prior tempore, potior jure, well applies at common law. [Keech v. Hall,] 1 Doug. 21; [Deafle v. Hall.] 3 Russ. 20. So, where a debtor in failing circumstances, conveys property to a third person, or a creditor, for an inadequate consideration, there, whether the proceeding is by attachment of the property, or by a trustee process, the conveyance is held to operate as an injury or fraud on other creditors, as it lets the property go to a stranger, or a single creditor, without an adequate consideration. It prevents the other creditors from getting as much from the property of the debtor as ought to be got from it, and thus defrauds them; and hence the conveyance is considered void. See cases of this character. Kimball v. Fenner, 12 N. H. 248; Everett v. Read, 3 N. H. 55.

Again, if a debtor, when failing, assigns his property to a portion of his creditors, to the exclusion entirely of others, who will not come in and release him, either for a share in that property, or for some reduced per centage on their claims, it has been held, that such a conveyance ought not in justice to stand, as it attempts to force other creditors to compound or relinquish a part of their honest claims, on the penalty of losing the whole. Jewett v. Barnard, 6 Greenl.

883; Halsey v. Fairbanks, [Case No. 5,964;] [Copeland v. Weld,] 8 Greenl. 411; 2 Kent, Comm. 420; Bradford v. Tappan, 11 Pick. 78; Brewer v. Pitkin, Id. 298. But if such a conveyance was to a part of one's creditors, as a mere preference of them on account of the favored character of their claims, and for an adequate consideration, it would not at common law be void. There a man may honestly pay any one of his creditors in full, in the usual course of business, though he has not enough left to pay all. [Russell v. Woodward,] 10 Pick. 408; [Brooks v. Marbury,] 11 Wheat. [24 U. S.] 78; Halsey v. Fairbanks, [Case No. 5,964;] Haven v. Richardson, 5 N. H. 113. But then he must sell or convey for its fair value. and no secret trust must exist to the injury of others, or to the special benefit of the debtor. [Coburn v. Pickering,] 3 N. H. 415; [Russell v. Woodward,] 10 Pick. 412. So if the creditors have not in truth assented to the assignment, in sufficient numbers and value to cover the property assigned, it has been held in this state that the consideration may be deemed inadequate and void as to the creditors who have not assented, though good as to those assenting. Russell v. Woodward, 10 Pick. 408; [Bradford v. Tappan.] 11 Pick. 78; [Brewer v. Pitkin,] Id. 298; [Ward v. Lamson,] 6 Pick. 358. In the first of these cases, also, the debtor was left in possession of the property, which is always a badge or evidence, slight or otherwise, of fraud. Clark v. Morse, 10 N. H. 236; Deshon v. The Medora, [Case No. 3,820;] Coburn v. Pickering, 3 N. H. 415; [Griffin v. Bixby,] 12 N. H. 454; [Bartlett v. Williams,] 1 Pick. 288. So any evidence of a secret trust or confidence tends to vitiate the deed. [Widgery v. Haskell,] 5 Mass. 144; [Paul v. Crooker,] 8 N. H. 288. It has been held, likewise, that if a surplus exist, after satisfying the creditors assenting, or those for whom the property was conveyed, it can undoubtedly be reached by a trustee process. [Bradford v. Tappan.] 11 Pick. 78; [Borden v. Sumner,] 4 Pick. 265; [Andrews v. Ludlow,] 5 Pick. 28; [Widgery v. Haskell,] 5 Mass. 144; Jewett v. Barnard, 6 Greenl. 385; [Com. v. Green,] 17 Mass. 552; 2 Kent, Comm. 420; Leeds v. Sayward, 6 N. H. 83. The assent of preferred creditors will usually be presumed, (Copeland v. Weld, 8 Greenl. 411; [Brooks v. Marbury, 24 U. S.] 11 Wheat. 78;) while that of others, it is said, must generally be expressed, (Id., [Russell v. Woodward,] 10 Pick. 408; [Jewett v. Barnard.] 6 Greenl. 384.) But where the assignment confers on them as great or greater security and privileges as going into insolvency would, (e. g., conveys all the property of the debtor for all, and asks no release of the balance, as here,) it seems highly equitable and useful to presume the assent of creditors not present, and not afterwards dissenting. Copeland v. Weld, 8 Greenl.

414; Halsey v. Fairbanks, [Case No. 5,964.] See, also, [Marbury v. Brooks,] 7 Wheat. [20 U. S.] 556, 578; [Brooks v. Marbury,] 11 Wheat. [24 U. S.] 78. It will not be necessary, however, to give a decisive opinion on this presumption under the circumstances in this case, as the creditors actually assenting here had more due to them than all the value of the property.

The present case will be found essentially unlike any of those which have been declared to be void. It is to be decided on the disclosure alone as if true; and though the transaction, as there represented, was rather inartificial in form, and some parts of it without the writings usually resorted to on such occasions; yet it is a very natural arrangement, to be honestly made between creditors and a debtor on his failure, and is in parts of it reduced to writing, and is throughout consistent with the peculiar situation of these parties. It seems to be conceded, that the debtor failed at Boston or Somerville in this state; that most of his property was in a remote part of Maine, and had been conveyed to a brother, and the note of the latter taken therefor; that the creditors had no remedy but to attach the property conveyed in Maine to the brother, as if conveyed in fraud of the creditors of the vendor; or sue the brother as trustee, and thus attempt to charge him on account of fraud, or some other defect in the proceedings; or take an assignment of the note against the brother, if J. F. Blodgett was willing to make it, and collect something on that towards satisfying their demands. Under these circumstances, there seemed to be no object nor benefit to the creditors as a whole in resorting to attachments or trustee actions to try the validity of the title, at some expense and risk, when J. F. Blodgett, the debtor, was willing to convey to them the note taken for the property in Maine, and agree, as far as he could effect it, that his brother should hand over to them the property and its proceeds on their returning to him the note; and that they might sell the property for the benefit of all his creditors, and he stand accountable to pay the balance of their debts at some future time. While the creditors as a whole could have no possible motive not to accede to this proposition, it indicates on the part of the debtor, (whatever suspicion might otherwise have rested on his conveyance to his brother,) a willingness to have all his property of any description go to the benefit of his creditors, and of all his creditors rather than a few, and to pay them any remaining balance, if able, at any future period. This was perfectly fair. Pickstock v. Lyster, 3 Maule & S. 371; Halsey v. Fairbanks, [Case No. 5,964.]

It is a mistake to suppose the assignment was not for the benefit of all, and the promise to pay the balance, not applicable to all, whether present or absent. What possible ground, then, is there in this arrangement with the creditors for imputing, so far as regards that, either a fraudulent design in the debtor, or a fraudulent injury to any creditor? The debtor relinquishes every thing, and renews his promise for the balance not then paid, and the creditors get every thing, and without conditions or restrictions. See further, in respect to this, [Holbird v. Anderson.] 5 Durn. & E. [Term R.] 235; [Estwick v. Caillaud,] Id. 420; [Meux v. Howell,] 4 East, 1; [King v. Watson,] 3 Price, 6. The debtor, it is admitted, may prefer at common law a part. Then why not treat all equally, when it is fairer? Again, the possession of the property was at once changed to the agent of the creditors, and without proving or presuming the assent of absent creditors, enough, as before stated, and particularly disclosed in the answer, were present here to equal by their debts the whole amount of property. These are facts shown with distinctness and not impugned, and which vary this case essentially from others which have been cited. Russell v. Woodward, 10 Pick. 412; [Stevens v. Bell,] 6 Mass. 342; Widgery v. Haskell, 5 Mass. 144. The old objection against these conveyances in trust, that no way existed to enforce them, there being no court of chancery in Massachusetts, is now entirely overcome by the extended chancery powers since vested in her courts of law, as well as overcome here by such powers existing fully in this court. [Copeland v. Weld,] 8 Greenl. 414; [Brown v. Minturn, Case No. 2,021;] [Scribner v. Hickok,] 4 Johns. Ch. 531. See, also, Foster v. Saco Manuf'g Co., 12 Pick. 451, 454, in point as to the present case.

It is questionable whether, looking at the matter in equity rather than at law exclusively, as was the practice here for some time, there is not always consideration enough to support the conveyance in the trustees undertaking to sell and distribute the proceeds. Halsey v. Fairbanks, [Case No. 5,964.] But that need not be decided here; for on the principles settled in the old cases in this state, this conveyance, as before shown, was on ample consideration. Indeed, it was pursuing almost the precise course pointed out by law under the present insolvent system, instead of doing something to thwart or defeat it. It secured, in addition to what that does, the debtor's future liability, and saved all the legal costs of going through the forms of that system. The last circumstance was probably a strong inducement for the parties here, who defend where the estate was small and the debtor willing to surrender every thing, to make this arrangement voluntarily, and save cost and expense to all concerned. Nor was the insolvent system needed to be resorted to, with a view to avoid under it any sale to third per-

sons, as might be proper for that purpose, in some cases. [Foster v. Saco Manuf'g Co.] 12 Pick. 453–455; [Penniman v. Cole,] 8 Metc. [Mass.] 496, 500. For here the third persons were willing to relinquish the sales previously made, and did relinquish them on request, and on the return of the note given for the consideration. But while this course was so manifestly beneficial to the creditors as a whole, paying them pro rata, equally, and applying to their debts all the proceeds of the debtor's property, without cost or expense of the insolvent system, and under the management and sales of one of their own number; and while they, as a whole, could have no interest in treating this proceeding as illegal or fraudulent, and could not so treat it, so far as they acquiesced or engaged in it, those creditors, not present, or not represented at the meeting in March 1846, like the plaintiff, were not obliged to sanction it. They might at their pleasure, attach the property in Maine, or trustee the brother, or even the respondent, one of the creditors, after receiving the property from the brother for the whole creditors. They might thus attempt to rip up all the proceedings for fraud or other defect, and if successful, secure the whole of their debts, instead of taking a pro rata share; though they might be liable, before judgment is entered up, and possibly after, if before any levy or seizin of property, to have the debtor put into insolvency by some other creditor, and their special lien thus dissolved, and that same general distribution compelled, which is now voluntarily going on.

It is not a little singular, as an illustration of the real character of the present suit, and of the transaction it seeks to avoid, that the suit, if successful, may end in a proceeding of insolvency as to Blodgett's estate, which would distribute it precisely as is now doing, except with an amount reduced by costs instead of any addition or advantage; and that the present plaintiff would not then realize so much on his debt as now, by the deduction of his proportional amount of cost, nor would he then have any remedy left, as now, for the balance. There can be no surer or better test, perhaps, of the propriety of not withdrawing this property from the respondent, than that it is now in his hands, accomplishing more to fulfil the social and moral purposes of the laws, than it would if withdrawn. Nor is the arrangement doing this in the teeth of any statute, or any provision of the common law. The statute in this commonwealth, passed in 1836, prohibiting conveyances to creditors, was to prevent a conveyance to preferred creditors or a favored few. That is not this case; and besides, that statute is repealed by the insolvent act of 1838. Carter v. Sibley, 4 Metc. [Mass.] 298. Nor does that insolvent act in terms prohibit any such conveyance as

this; nor can it be implied from the fact, that the two courses are exactly the same. They differ materially and unfavorably to the debtor. This trust dispenses with several forms and considerable expense, and holds the debtor still liable for the balance. Whereas that course releases the debtor from liability for the balance, and subjects him to go through with the statutory course, in order to entitle himself to be released. Nor are the two courses inconsistent and incompatible any more than identical. Nor is one mode imperatively a substitute for the other. The present mode is more favorable to the creditors, and hence is not presumed to be forbidden by the other. The debtor or the creditors may prefer either to the other, and if they do so unitedly, or if the debtor and most of the creditors do, neither the insolvent statutes, nor any public policy in it seem violated, or require a forced construction to abrogate this trust.

The insolvent statute of 1838 was held to repeal the assignment statute of 1836, because it substituted one statutory system for another statutory system, alike in substance, but different in form. Carter v. Sibley, 4 Metc. [Mass.] 298. But here, the act of 1838 does not repeal the present trust by an implication of this kind, because it is not a trust made under the act of 1836, and differs in some particulars in substance from both of those statutes. Nor is there any principle of the common law opposed to this conveyance. Had it been made honestly and for an adequate consideration, even to a part only of the creditors, it would have been valid at common law. (See cases before.) And nobody ever doubted at common law that a conveyance to all one's creditors to secure their honest debts, if they assented, was sufficient consideration, was valid. [Carter v. Sibley,] 4 Metc. [Mass.] 300, semb.; [Russell v. Woodward,] 10 Pick. 412; Stevens v. Bell, 6 Mass. 342. It is the very design and wish of the law, that the property should all go to them. This is also the refinement of the modern bankrupt or insolvent system to have it go equally as here. In aiding this, you aid justice rather than defeat it. You benefit rather than injure the creditors as a whole. You are guilty of no fraud, either in fact or law, as to all or any portion of them. Certainly not in fact, when all the property is placed in the hands of all, or of a part for all; and certainly not in law, where none are excluded, and none required on any terms whatever, to execute releases or accept as final payment less than all their claims.

Under this analysis of the subject, no fraud whatever seems to exist between the parties, whatever may have been contemplated originally between the two brothers. How that may have been is not material here, as their contract must be considered either as rescinded, or the property sold by

the brother to the creditors themselves, towards the payment honestly of all their debts, and for the original consideration, the note, so as to purge away any fraud that might have been once contemplated against others. It is now held in trust for all, and hence the old sale injures or defrauds none. Nor is it any objection to the present agreement between the creditors and J. F. Blodgett, that it was not all put in writing. It is clearly proved, part by parol and part by writing, and is not required to be shown by writing, either by the statute of frauds or any common law principle. The consideration for it is, also, as full and good as the consideration of the original debts of the several creditors, and the validity and amount of the debts of each is to be settled in the same way, as in all cases of assignments and trusts. If not done by the debtor and each creditor under the inspection of the agent or trustee, so as to be satisfactory, it may be tested in a suit like this, and the trustee, on motion, be allowed to defend for the debtor. So the whole administration of the trust can be revised by a bill in chancery, if any debtor chooses. Nor is there any difficulty as to the creditors not present, and who do not choose to come in and take their dividend with the rest. They are left, like the present creditor in this action, to a suit against the original debtor, and may seize any property they can find unassigned, or subsequently acquired, or his body, if liable. They stand like creditors, who do not choose to prove their debts under a bankrupt commission, and may resort elsewhere to any remedy or property which exists. But in this case, as no dividend has yet been awarded, the plaintiff could probably claim one out of the property, finding it has been legally assigned to pay him as well as the rest, so far as it goes, after deducting all reasonable costs and expenses.

I see no objection to a continuance of this action, to see what the dividend to each creditor applying is, and how the trustee conducts, and to put further interrogatories, if his behavior should require it. But he cannot be charged with the whole property, or enough to pay the plaintiff's debt, on the disclosure as it now stands; though in due time he may be liable to account for a pro rata share to the plain——, if desiring it. All which need be said now definitely on that, or the costs in this suit is, that the defendant, summoned as trustee, cannot be charged in the manner and to the extent claimed, and seems entitled to his cost. But it may become proper for him, at some ensuing term, to pay over to the plaintiff his proportionate share under the conveyance; or if the principal is forced by his creditors to go into insolvency under the statute of 1838, the trustee may be liable to account and deliver over what he holds to the statutory assignees. [Insurance Co. v. Chandler,] 16 Mass. 275; [Borden v. Sumner,] 4 Pick. 265. How that may be, can probably be settled by the next term; as also what the share of the plaintiff may be, if the estate is settled finally under the present conveyance. Let the case, therefore, stand continued, if the plaintiff desires it, before any formal judgment is entered.