THOMAS EDWARDS *vs.* WILLIAM MITCHELL & others & trustees.

The assignment law of 1836, *c.* 238, is repealed by the insolvent law of 1838, *c.* 163, only so far as the provisions of the two statutes are inconsistent with each other.

An assignment by a debtor, of all his property, to a trustee, for the benefit of his creditors is inconsistent with the spirit and provisions of the *Sts.* of 1836, *c.* 238, and 1838, *c.* 163; and is voidable by any creditor who does not assent to it.

An assignment of property made by a debtor to a trustee for the benefit of creditors, not assented to by any creditor, was void at common law, before *Sts.* 1836, *c.* 238, and 1838 *c.* 163, were passed.

SHAW, C. J.   The only question in the present case is, whether Samuel S. Arnold and William Ellison, summoned as trustees, are liable to be charged as trustees on their answers.   By the general answer, and the answers to specific interrogatories, it appears that the principal defendants, William Mitchell, Charles H. Hart and Isaiah F. Arnold, constituting the firm of William Mitchell & Company, in February preceding the attachment, by an indenture expressed to be between themselves of the first part, the trustees of the second part, and all their creditors, who should thereafter execute or accede to these presents, of the third part, and for a nominal consideration, made an assignment and conveyance, to the trustees, of all their stock in trade, choses in action and real estate, reciting their inability to pay their debts, and their desire to transfer all their available property for the benefit of all their creditors.   This conveyance and assignment was made upon the trusts usual and common in such assignments prior to the statute of 1836, *c.* 238, with the usual covenants; and purported to contain a full release of their debts, on the part of the creditors.   This instrument was executed and delivered, on the part of the debtors and trustees, but, although purporting to be also the act and deed of the creditors, it was executed by none of them, except Samuel S. Arnold, who stood in the double capacity of creditor and assignee.

The court are of opinion that this, as an assignment and conveyance of property to trustees, was inoperative and void, and liable to be set aside and invalidated by and in behalf of creditors, in any of the modes provided by law, as by a seizure

on execution, an attachment on mesne process by a creditor of the assignors, or by the assignee of the debtors under proceedings in insolvency ; and this upon several grounds.

Such an assignment is inconsistent with the spirit and provisions of the statute of 1836, *c.* 238, to regulate the assignment and distribution of the property of insolvent debtors.

It has sometimes been made a question, whether this statute of 1836 has not been repealed by the more general act passed two years after, making more full, ample and complete provisions for the relief of insolvent debtors, and the distribution of their estates. *St.* 1838, *c.* 163. It is certain that the latter does not repeal the former in terms, but only repeals all provisions of law inconsistent with the provisions of the latter. Now, as the insolvent law was intended to accomplish the same object, by more ample and efficient means, to operate upon the same persons and the same subject matter, as the assignment law, the two systems will in most cases come in conflict with each other ; in which event the insolvent law will supersede the assignment law; its provisions would be inconsistent, and so by its terms would repeal the former. *Carter* v. *Sibley*, 4 Met. 298.

But the insolvent law, when the two systems do not come in contact, does not abrogate or annul the assignment law; and it would be strange if the insolvent law intended to establish a larger and more equitable policy, in regard to the equal distribution of the estates of insolvent debtors, under officers and tribunals appointed by law, with defined duties, under suitable responsibilities, should be so construed as to let in all the mischiefs of the old system of assignments, where the debtor took his own time to assign, appointed his own assignees, made an assignment of his whole property or not at his pleasure, and preferred such creditors as he thought fit.

This assignment is equally repugnant to the general insolvent law, *St.* 1838, *c.* 163, as was decided at the last March term, in the case of *Wyles* v. *Beals*, *ante*, 233.

But, independently of those statutes, an assignment of property to trustees for the benefit of creditors, to which the

creditors are not parties, would be void against creditors, by the common law of Massachusetts, as it was understood and administered, before the first of these statutes was passed.

So far as these assignments in trust were formerly supported as legal and valid, they went upon the principle, that although a debtor could not voluntarily give away his property, or convey it without adequate consideration, to the injury of his creditors, yet he could deliver his property to actual creditors, at its fair value, in satisfaction of actually subsisting debts; and so he might, by their direction and with their concurrence, convey it to persons designated and approved by them, to hold and apply it for their use. Still it must have been for actually subsisting debts, due to such creditors; and their concurrence, consent and recognition, of the trustees and assignees, as their appointees and agents, must have been manifested by the creditors becoming actual parties to the assignment. It was not binding upon creditors who did not become parties to it; nor could it avail to enable the assignees to hold property of a value exceeding the debts due to the creditors who were parties to it. Any excess of property might have been attached and held by the ordinary process of law, by any creditor not a party.

As a debtor might convey his property, at its fair value, to satisfy any actually subsisting debt, it is obvious that he might prefer one or more creditors, to the entire exclusion of others. Of course, a man having property of the value of $10,000, owing $20,000, namely, $10,000 to a father or son, or other favored creditor, and $10,000 to twenty other creditors, might convey the whole property to the favored creditor, to the absolute exclusion of every other. The authorities are very numerous, and we will cite a few only of the leading and earlier cases. *Widgery* v. *Haskell,* 5 Mass. 144. *Parker* v. *Kinsman,* 8 Mass. 486. *Russell* v. *Woodward,* 10 Pick. 408. See the cases collected in Minot's Dig. Fraud & Fraudulent Conveyances, III.

And it is equally clear, that property thus conveyed in trust may be reached by a trustee attachment, in which the assignees are summoned as the trustees of the assignor. Such convey-

ance is not absolutely void, but voidable only by creditors. It is valid as between the parties. A man may give away his property, and convey it without compensation, if he chooses, and if creditors are not thereby injured; such conveyance therefore transfers a possession of the property, and a title, though a defeasible title as against creditors. Such property therefore is entrusted and deposited with the assignee, within the true intent and meaning of the trustee law, and will be bound by a trustee attachment. *Parker* v. *Kinsman,* 8 Mass. 486. *Burlingame* v. *Bell,* 16 Mass. 318. *Viall* v. *Bliss,* 9 Pick. 13.

In the present case, it appears that the assignees took, under the assignment, merchandise, that is, goods and chattels liable to attachment, to the amount of nearly $40,000; and that no creditor became party to it, except Arnold, who was a creditor to an amount not exceeding $5,000, and who was also an assignee. Independently therefore of the choses in action embraced in the assignment, which perhaps are not attachable in this form, the trustees had a large amount. The assent of the creditors could not be presumed, even if there had been no clause in the indenture, by which, if they had executed it, they would release and discharge their debts. *Russell* v. *Woodward,* 10 Pick. 408. But in this indenture there is such a clause; which is entirely decisive.

The fact that many creditors came in afterwards, and made a composition with the assignees and released their claims, can have no effect. They may be bound by their agreement and release; *volentibus non fit injuria.* But the question is upon the legal rights of an attaching creditor, who has given no assent.    *Trustees charged.*

*C. C. Nutter,* for the plaintiff.

No counsel appeared for the trustee.