May Term, 1849.

CALDWELL v. WILLIAMS.

(1) See *post*.

---

CALDWELL *v.* WILLIAMS and Others.

| 1 | 405 |
| 145 | 168 |
| 1 | 405 |
| f157 | 656 |

The assignment of property, by the debtor, for the benefit of his creditors, is void, if there is a secret trust for his benefit.

Exclusive possession must accompany or follow an assignment of property for the benefit of creditors, or it is fraudulent and void as to the creditors, unless a sound reason is given for the omission of such possession to rebut the presumption of fraud.

When there is a common purpose between the assignor and the assignees to defraud, the declarations of the assignor made after the deed, are admissible to prove the fraud.

The assent of part of the creditors to an assignment of personal property by the debtor, which is fraudulent as between him and the assignees, the creditors having an opportunity to observe the suspicious nature of the transaction, does not purge the contract of fraud even as to them, and the fraud pervades and vitiates the whole assignment.

APPEAL from the *Parke* Circuit Court.

PERKINS, J.—Trial of the right of property between assignees of a judgment-debtor and execution-plaintiffs, first had before the mayor of *Terre Haute*, where, on two successive hearings, the execution-plaintiffs succeeded. An appeal was taken by the claimants to the *Vigo* Circuit Court, from whence, by change of venue, the cause was removed to the *Parke* Circuit Court. In that Court the

*Friday, July* 13.

cause was twice tried by jury with opposite results. The second of those trials terminated in favor of the execution-plaintiffs, the defendants in this Court. The evidence and instructions are upon the record by bills of exceptions. The main question in the cause on the trial in the Circuit Court was whether the assignment by virtue of which the two plaintiffs (one of them having since died) claimed the personal property embraced in it, and involved in this suit, was fraudulent. That was a question of fact for the jury and was by them, under instructions from the Court, decided. Objections were made to those instructions; but as the evidence is all upon the record we shall first look into it, and, under the practice adopted by this Court, should we find the judgment below, in our opinion, clearly right upon the merits, we shall not reverse even should the instructions be erroneous; but should we doubt upon the weight of the evidence, we shall then look into the instructions.

The claimants, or plaintiffs as we shall call them, place their title to the property upon a deed of assignment executed by *William McMurran* on the 9th day of *April*, 1841, and purporting to convey to them, *Madison C. Harrison* and *Andrew W. Caldwell*, a large quantity of real estate, and also all *McMurran's* goods, chattels, and merchandise, except such as might by law be exempt from execution, in trust, to be by them applied in the payment of certain specified and preferred debts, giving them likewise power to sell the property and close up the business in such reasonable time as would best promote the interest of the creditors. This deed was recorded in the recorder's office of the proper county. The defendants rested their right upon their judgments, executions, and levies, and claimed that the deed to the plaintiffs was fraudulent, and their title, consequently, invalid. The facts connected with the assignment are as follow: *William McMurran* was carrying on a tannery and keeping a leather store in *Terre Haute*. His tannery and dwelling house were upon his own ground. *Madison C. Harrison* and *Andrew W. Caldwell* were, the one a clerk, the other a journeyman, in his

employ, and both boarders in his family.  *McMurran* be-
came indebted beyond his ability to pay, and embarrassed
for the want of means to meet daily emergencies.  He
thereupon made the deed of assignment above mentioned
to the said *Harrison* and *Caldwell*, (they being also two of
his creditors,) as trustees, young, unmarried men, of about
25 years of age, and not very competent to manage so
extensive a trust as was committed to them.  This deed
of assignment embraced the house in which *McMurran*
lived, the furniture in it not exempt from sale on execu-
tion, the premises on which was the tannery, &c., with
other property.  No visible change took place after the
assigment in the relation between the assignor and the
assignees.  *McMurran* and family continued to occupy
the house and furniture as before, and *Harrison* and *Cald-
well* to board with them, and he and they still worked to-
gether in and about the tannery.  No sale was made for
some months of the household furniture, and none was
ever made of the real estate.  The assignees seem to
have been governed in the settling of debts, the appro-
priation of the property, and the management of the
business generally by the directions of *McMurran*, even,
in some cases, to the violation of the provisions of the
deed of assignment.  The assignees, in some instances,
disregarded the terms of the assignment, by using the
finished leather assigned for the payment of debts, in
paying for green hides purchased by them.  After the
assignment, considerable amounts of property were trans-
ferred by *McMurran* to *Harrison*, separately, the object
not being specified.  *McMurran* stated, about the time of
the assignment, that two of his debts he did not mean to
pay, one to *Rose* who had had him arrested upon a *ca-
pias*, and the other to a work hand, who, he said, had read
his Bible when he should have been at work.  In *October*
succeeding the assignment, *McMurran* moved with his
family to *St. Louis*, and, in addition to his household fur-
niture which he took with him, *Caldwell*, one of the as-
signees, forwarded to him from the tannery at *Terre Haute*,
two large boxes of leather weighing, at least, 900 pounds,

May Term,
1849.

CALDWELL
v.
WILLIAMS.

May Term,
1849.

CALDWELL
v.
WILLIAMS.

concealing from the wagoner who took them, their contents. A small portion of the creditors provided for in the assignment verbally assented to it. These are the leading circumstances necessary to be considered in determining upon this case.

The first question arising is, does it appear that a sufficient possession followed the conveyance of the property? We think it does not. Certainly, the assignees had no exclusive possession. A joint one with *McMurran* is the most that can be claimed for them; and in this case, where the assignees selected were members of the assignor's family and of doubtful competency, it seems to us peculiarly important that an exclusive possession of the personal property should be shown, or a sound reason given for the omission of such possession, to aid in rebutting the presumption which such a selection of assignees of itself conduces to raise, that there was a secret trust in the assignment for the benefit of the assignor. No reason is given why an exclusive possession was not taken in the present case. "In *Wordall* v. *Smith*, 1 Camp. 333, where an action was brought against the sheriff of *Middlesex* for a false return to a writ of *fieri facias* sued out by the plaintiff against *John Mason*, and returned by the sheriff *nulla bona*, and upon the trial it appeared that *Mason* had, before the issuing of the *fieri facias*, assigned all his effects to a creditor whose servant was immediately put into the house, and remained conjointly with *Mason*, Lord *Ellenborough* directed a verdict for the plaintiff, saying, ' To defeat the execution there must have been a *bona fide* substantial change of possession. It is mere mockery to put another person to take possession jointly with the former owner of the goods. A concurrent possession with the assignor is colorable; there must be an exclusive possession under the assignment or it is fraudulent and void as to creditors.' " 1 Smith's L. C. 40. See, also, *Babb* v. *Clemson, infra*. This case, then, must be treated as one in which possession did not accompany or follow the assignment. This being the case, we are able at once to answer the next question raised, viz., whether the

declarations of *McMurran*, the assignor, made subsequently to his conveyance, and tending to show it fraudulent, were admissible in evidence. In *Waterbury* v. *Sturtevant*, 18 Wend. 353, it is said, " that the declarations of a grantor, made after the execution of his deed, cannot be received to defeat it, is well established as a general proposition. It is a part of the rule that *hearsay* is not evidence. There are, however, several exceptions to that rule; and among others, the declaration of a man against himself. A kindred exception is where several persons are embarked in a common object or enterprise. There, the connection and purpose being first made out to the satisfaction of the Court, the declaration of one, while engaged in the prosecution of his purpose, may be received against another. A common case is of rioters and conspirators; *Commonwealth* v. *Crowninshield*, 10 Pick. 497; but the exception extends equally to all cases where a combination to commit a wrong among several individuals, is once established. Each, then, becomes responsible for the declarations as well as the acts of the other. The exception has very properly been applied to the case of a debtor continuing in possession of personal property after sale. What he may say while thus in possession is receivable against his vendee as a part of the *res gesta*, to make out a fraud against the creditors by the latter. *Willis* v. *Farley*, 3 Carr. & Payne, 375.—*Babb* v. *Clemson*, 10 Serg. & Rawle, 419, 426, 427, and 12 id. 328, 329, 330.—*Wilber* v. *Strickland*, 1 Rawle, 458; and the same thing has been repeatedly held where the Court was first convinced by that or other evidence that there was a common purpose to defraud in the vendor and vendee; per *Carr* and *Green*, justices, in *Clayton* v. *Anthony*, 6 Rand. R. 285.—*Ritenback* v. *Ritenback*, 1 Rawle 362.—*Wilber* v. *Strickland*, id. 458." See, also, *Jackson* v. *Myres*, 11 Wend. 353; part 1, of Cowen and Hill's notes to Phillip's Ev. p. 601, et. seq.—1 Greenleaf's Ev. s. 111 (1). The facts, then, hereinbefore stated as appearing in this case, having been proved by legal evidence, are more than sufficient, under the adjudged cases, to indicate a secret

May Term, 1849.

CALDWELL v. WILLIAMS.

trust for the benefit of the assignor, between him and the assignees, and to make the assignment fraudulent as to creditors. Some of those facts occurred subsequently to the levy of the executions, but that circumstance does not weaken their force as evidence. Nor does the fact that the deed of assignment was recorded affect the case. There was no law for the recording of assignments of personal property of this character, and had there been, indeed, the recording would not have excused the general conduct of the parties to the assignment in this case.

There is but one more question in the case requiring notice. It is said that, though the assignment is fraudulent as to the assignor and assignees, still, if the creditors for whose benefit it was made, the *cestuis que trust*, are not parties to that fraud, the assignment will stand for the benefit of those creditors.

The contract of assignment is between the assignor and assignees. The creditors generally are parties to it, if at all, by subsequent assent, expressed or implied. That assent was given to the contract, such as it was, between the assignor and assignees, with full opportunity, in this case, on the part of creditors to observe the character of the assignees, and the apparent suspicious nature of the transaction; and if that contract was fraudulent, the assent of the creditors under such circumstances has not purged it of the fraud even as to them. But aside from this, in the present case, the assignees are also among the largest creditors provided for in the assignment. This being the case, the assignment is fraudulent as to two, at least, of the creditors, as well as to the assignees, as we have already held; and, being general of all the property for the payment of all the named debts, and not of separate parts of the property for the payment of specified debts, the fraud pervades the whole assignment, and must, at least as to the personal property, vitiate the whole; for how can we separate the good from the evil? Will the fact that there may be one honest *cestui que trust* along with twenty fraudulent, render the assignment of all the property valid in the hands

of fraudulent trustees for his sake, give those trustees the legal title to the whole till he is paid, and thus hinder and delay all execution creditors? If not, how is a separation in the personal property to be made? To which piece shall the trustees hold the legal title, and to which not? It seems to us the assignment as to the personal property (we say nothing as to the realty) must be void on this ground, thus leaving all the creditors on equal footing to prosecute to judgment and execution. Again; it is a general doctrine that a deed void in part for fraud is void *in toto*. 2 Hilliard, 428 (2).

*Per Curiam.*—The judgment is affirmed, with 10 per cent. damages on 3,350 dollars, the value of the property assessed by the jury, with costs.

*A. Kinney, S. B. Gookins, R. W. Thompson,* and *C. W. Barbour,* for the appellant.

*J. P. Usher* and *W. D. Griswold,* for the appellees.

May Term, 1849.<br>CALDWELL<br>v.<br>WILLIAMS.

(1) The declarations or admissions of a vendor of personal property, though made before sale, are not evidence against the vendee; but the vendor should be called as a witness. Where a witness is interested against the party calling him, he is competent.—*Hurd* v. *West,* 7 Cow. 752.

In an action of trover by a sheriff who levied on goods without notice of any rent being in arrear against the landlord who had distrained the same goods, the tenant was held to be a competent witness, and evidence of his confessions inadmissible.—*Alexander* v. *Mahon,* 11 John. 185. In an action on a note payable to *A. B.* or *bearer,* transferred and suit brought by the *assignee,* evidence of declarations or admissions made by the *payee* while the holder and owner of the note, in discharge of the drawer, is inadmissible.

The *payee* is a competent witness, and should be produced to prove the defence set up.

The rule of evidence laid down in *Hurd* v. *West,* 7 Cow. 752, that the declarations of a *vendor* of personal property, though before sale, are not evidence against the *vendee,* and that the vendor must be called as a witness is confirmed and the note of the reporter in the case of *Austin* v. *Sawyer,* 9 Cow. 39, intimating that the latter case overruled the former, is corrected.—*Whittaker* v. *Brown,* 8 Wend. 490. On a question of fraud in the sale of property, the declarations as well as the doings of the actors in the transaction are competent evidence; the declarations give a character to the acts.—*Crary* v. *Sprague et al.,* 12 Wend, 41.

See, also, 3 Cow. 622.—9 id. 39.—5 John. 426.—and 12 Wend. 161.

And where a combination between several persons for an *illegal object* is clearly established, the *acts* and *declarations* of one of the parties to the subject matter of the combination, whilst engaged in the prosecution of the

joint design, are admissible in evidence against his associates.—*Waterbury et al.* v. *Sturtevant*, 18 Wend, 360.

11 Wend. 536.—2 Cowen and Hill's Notes 178, 602, 603.

(2) A debtor has a right to prefer one creditor to another in payment, and his private motives for giving the preference, cannot affect the exercise of the right, if the preferred creditor has done nothing improper to procure it.

It is no objection to the validity of the deed that it was made by the grantor, in the hope and expectation that it would prevent a prosecution for felony, connected with his transactions with his creditors; if the favored creditors have done nothing to excite that hope, and the deed was not made with their concurrence, and with the knowledge of the motives which influenced the grantor, or was not afterwards assented to by them under some express or implied engagement to suppress the prosecution. Nor will it be invalidated by the fact, that the trustee, to whom the conveyance is made, being the father-in-law of the debtor, received the conveyance with a view of concealing the felony, and preventing a prosecution of his son-in-law, provided it was not executed with a concurrence of the *cestui que trusts*, and a knowledge on their part of the motives which influenced the trustee, or was not afterwards assented to by them under some engagement to suppress the prosecution.—*Marberry* v. *Brooks*, 7 Wheat. 556.

Upon an inquiry into the validity of a conveyance alleged by creditors of the grantor to be fraudulent, they may give in evidence the acts or declarations of the grantor, prior to the conveyance, tending to show that he had a fraudulent intent, without being required to prove a knowledge on the part of the grantee, of the particular acts or declarations, from which such interest of the grantor was to be inferred; the conveyance, however, will not be defeated, unless it is also proved that the grantee had knowledge of the fraudulent intent.—*Foster* v. *Hall, et al.* 12 Pick. 89.

An assignment by a bill of sale by an insolvent debtor in trust for all his creditors, where the trustee merely gave his promissory note to the debtor without any indorser or other security, or any agreement to perform the trust, and some of the creditors assented to the assignment verbally only, and others not at all, was held to be void as against the attaching creditor.—*Quincy* v. *Hall*, 1 Pick. 357.

In order to maintain an assignment by a failing debtor for the benefit of creditors, against an attachment of a creditor not a party to such assignment, it must appear that the assignment was made upon a valuable and adequate consideration, and in good faith, to satisfy or secure existing debts, or to indemnify against subsisting liabilities, and that it has been assented to by the creditors or sureties whose demands are sufficient to absorb the property conveyed, and the burthen of proof is upon the assignees to show an adequate consideration for the assignment.—*Russell* v. *Woodward*, 10 Pick. 408.

A debtor assigned goods by deed-poll, in trust to pay certain creditors in full and other creditors who should in writing express their assent to the assignment, *pro rata*, and the goods were forthwith delivered to the assignee; but before the assignee, who was himself a creditor, or any other creditor, had in writing assented to the assignment, the assignee was sum-

moned, in a process of foreign attachment, as the trustee of the assignor. *Held*, that the assignee had no right to retain the goods in order to satisfy his own demand or that of any other creditor, and that he was chargeable as trustee.—*Brewer* v. *Pitkin et al.* 11 Pick. 298.

May Term, 1849.

Where *B.* obtained from *L.* a deed for land, through fraud, in which *H.* was concerned, and *B.* afterwards confessed a judgment to *H.*, who assigned it to *R.* for a valuable consideration, and without notice of the fraud, it was *held* that the deed to *B.* being null on account of the fraud, the judgment created no valid lien on the land; that *R.* took the assignment at his peril, and subject to all the existing rights of the debtor; and the land was decreed to be re-conveyed, discharged from the judgment, and a perpetual injunction awarded.—*Livingston* v. *Hubbs*, 2 John. Ch. R. 512.

A conveyance by a debtor of certain lands in trust for all his creditors who should come in and release their demands, is fraudulent.—*Leaving et al.* v. *Binkerhoff, et al.*, 5 John. Ch. R. 329.

Where there is a mistake in a deed to a trustee, who afterwards conveys the premises to the *cestui que trust* without any new consideration, the latter is not entitled to defend himself as a *bona fide* purchaser without notice of the mistake.—*Le Roy* v. *Platt, et al.*, 4 Paige, 77.

See also, 7 Wheat. 556.—11 id. 78.—4 id. 466.—4 Day, 150.—3 id. 340.—14 John. 498.—3 John. Ch. R. 378.—12 Mass. 456.—14 id. 245.—3 Metc. 63.—3 Monroe, 1.—J. J. Marsh. 226.—1 Binn. 159—502.—1 Doug. 86.—1 Burr. 467.—2 id. 827.—5 T. R. 235.—1 Atk. 463.—3 M. & S. 371.—4 East. 1.—5 Mass. 144.—13 id. 146.—17 id. 454.—5 John. Ch. R. 331.—7 id. 65.—2 Atk. 397—630.—3 id. 304.