## WRIGHT vs. ZEIGLER BROTHERS.

1. Fraudulent misrepresentations which will avoid a sale at the instance of the vendor must have been known to him and have induced him to make a sale which, without them, he would not have made; they must have been made prior to, or at the time of, the contract.

2. In a suit by a vendor to recover goods, on the ground that the sale was induced by fraud, evidence of fraudulent transactions between the vendee and other parties than the plaintiff, with which the latter had no connection, and of which he had no knowledge, was inadmissible.

(a.) In this case the defendant was not the original vendee, but an assignee under him, who represented creditors; and neither he nor they were shown to have knowledge of any fraud which would vitiate the sale.

3. The declarations of an assignor, made after the execution of the

deed of assignment, were inadmissible for the purpose of annulling the assignment or of recovering property embraced in the deed. *Alliter*, if the declarations accompanied the making of the deed, or were so nearly connected therewith as to form part of the *res gestæ*, or if they were made in disparagement of the assignor's title while he was in possession, or if the assignor and assignee were in collusion.

4. Suit was originally brought to recover goods from one as an assignee; by amendment the action was converted into one against the assignee as an individual, but he insisted, by way of defence, that he held as assignee for the benefit of the assignor's creditors, including the plaintiff, and was not liable, and that the latter must elect to claim under or in opposition to the assignment: *Held*, that testimony taken while the suit was against the defendant as assignee, if otherwise unobjectionable, was not rendered inadmissible by reason of the amendment.

5. If there has been fraud in the contract of sale, the vendor may either affirm and enforce it, or he may rescind it; he may proceed for the purchase money or sue for the goods. But until he elects, if his vendee transfer the goods in whole or in part, whether the transfer be of a general or special property in them, to an innocent third person for a valuable consideration, the rights of the original vendor will be subordinated to those of such innocent third person.

(*a.*) A creditor cannot both assail and claim under an assignment, and he must elect before beginning proceedings. In this case, having sued for the goods, that amounts to an election, and he cannot await the result of that suit before electing. Therefore, it was immaterial, in answering interrogatories, whether he fully answered as to his intention or not.

6. The other questions made by this record are determined by the case of *Whittendale vs. Dixon & Bro.*, decided to-day.

April 17, 1883.

Fraud. Vendor and Purchaser. Evidence. Assignments. Amendment. Before Judge Eve. City Court of Richmond County. October Term, 1882.

On March 13, 1882, Zeigler Brothers brought trover in the city court of Richmond county against Wright, as assignee of Whittendale, to recover certain goods. Defendant filed the following pleas: (1), That the act creating the city court of Richmond county was unconstitutional, and that said court had no jurisdiction in the case; (2), the general issue; (3), that defendant holds possession of

the property sued for under an assignment made by Whittendale for the benefit of his creditors, among whom plaintiffs are classed; and defendant prays that plaintiffs be required to elect whether they will claim as creditors, before proceeding with this action.   By agreement, the goods were sold and the proceeds deposited in bank, subject to the determination of the suit.

When the case was called, defendant moved to dismiss it, because trover would not lie against the assignee.   The court indicated his intention to dismiss the case.   Thereupon, plaintiffs amended by striking the representative character of Wright, and leaving the suit to proceed against him personally.   The case was then continued, plaintiffs filing exceptions *pendente lite* to the rulings of the court.

On the trial, the evidence on behalf of the plaintiffs showed, in brief, the following facts :

Christopher Whittendale, a merchant in Augusta, Georgia, having previously dealt with Zeigler Brothers, on the 7th of December, 1881, gave to one Challenger, their salesman, then in Augusta, Georgia, an order for the goods sued for, stated to be upon terms as usual, to be shipped by Savannah at once.   The goods were shipped on December 31st, 1881, by the transportation company to whom they had been delivered December 29th, 1881.   On the 27th of December, 1881, Whittendale countermanded the order, stating : " There is no business, and collections are slow." This letter was received December 31st, 1881.   The goods came forward, and were received in the store of Whittendale January 5th, 1882, their receipt entered on the daybook; and on the 6th of January, 1882, Whittendale executed a general deed of assignment to Wright of all his stock and other property, their goods being in the schedule, and Zeigler Brothers named as creditors.   Wright gave notice at once of the deed of assignment.   Zeigler Brothers obtained from the newspapers their first knowledge of the failure, about January 7th, 1882.   On the 10th of Janu-

ary, 1882, one of the plaintiffs visited Augusta, and saw the goods in possession of the assignee, after having failed in an effort to stop the goods *in transitu.* These goods were purchased on sixty days' time. At the date of the order and the date upon which the goods were shipped, Zeigler Brothers believed Whittendale to be perfectly solvent. Whittendale was in good standing and credit with plaintiffs at the time they sold and shipped the goods.

The evidence for the plaintiffs, to show fraud, was as follows: A conveyance, November 29th, 1881, by Whittendale to Hardeman of Whittendale's residence, for five thousand dollars, which, on the same day, was conveyed by Hardeman back to Whittendale in trust for his wife and children. Sales by Whittendale to one J. B. White of goods to the amount of $3,000, about December 20th, 1881, at from five to eighteen per cent. discount from the face of the bills for cash, the bills being rendered without showing this discount. The books of Whittendale, showing that he ceased to make entries after December 6th, 1881, of cash received, which then showed a large balance to his credit,— the books being posted in other particulars, except the sales to White and to Damish, a preferred creditor, up to January 6th, 1882. That he had on hand August 2, 1881, a net capital invested in the business of twelve thousand eight hundred and forty-seven dollars, and that on the 6th of December, 1881, he had nineteen hundred and thirty-eight 65–100 dollars to his credit; that he drew but little from his business; was in the habit of discounting his own bills to December 1st, 1881; that he made large purchases during December, 1881, a large proportion of which goods were received after December 20th, 1881; that between $2,600 and $2,900 worth were received after January 1, 1882, and $1,447 worth were received on January 6, 1882, the day of the assignment; that none of the preferred creditors, under the deed of assignment, appear upon his books, with the exception of one McKnight's note; that on the

6th of January, 1882, he executed a deed of assignment, with preferences to the amount of seventeen thousand seven hundred and fifty dollars, with an excess of liabilities over assets of sixteen thousand one hundred and nineteen 46–100 dollars; that after the deed of assignment, on the 13th of June, 1882, Whittendale, as the trustee of his wife, conveyed his house and lot to Thomas C. Bligh.

In regard to the claim of McKnight, it appears that he and Whittendale had been partners, and dissolved August 5, 1881. Whittendale bought the notes and accounts for $2,500, giving therefor three notes due November 1, 1881, January 1, 1882, and April 1, 1882, (the last note being for $500, the others for $1,000 each). The first note was paid at maturity, the second was marked in the bill-book, "Paid January 4, 1882," but no other entry appears.

Damish was another preferred creditor. It appeared that he was a clerk receiving $60 per month, and his account as such was balanced by cash and small items of merchandise. He also had a separate account on the ledger as of "Graham's P. O., S. C.," extending from September 3 to December 12, 1881. The largest purchase at any time was $186.14. Most of the purchases were for less than $100, and the aggregate amount was $858.67. He was credited with payments of cash, and on December 30 the account was balanced. On the blotter appeared entries of purchases on December 28 and 30, 1881, and January 3, 1882, which were marked "paid," in pencil. He was placed among the preferred creditors as holding a note for $2,000.

The evidence for the defendant was as follows:

On the 29th of December, 1881, plaintiffs forwarded a bill for the goods sued for, which bill contained the following statement printed at the top thereof: "All payments must be made to the firm direct, unless upon special order; all claims must be made within three days after receipt of goods; no goods taken back unless damaged, or disagreeing with the terms of sale."

The goods sued for were received at Augusta, Ga., at the store of Christopher Whittendale, number 839 Broad street, January 5, 1882, and on their receipt entered on the day-book of Whittendale. On the 6th of January, 1882, Whittendale executed a deed of assignment to the defendant of all his effects, including the stock in trade in said store, an inventory of which is annexed to the deed of assignment, and upon which appears the goods sued for. The assignee accepted the trust January 6th, 1882, gave public notice the same day, and filed the deed of assignment for record January 7th, 1882, which was duly recorded. The goods were in the possession of the assignee at the time the suit was brought, and a demand made therefor. The names of plaintiffs appear as creditors on the schedule annexed to the deed of assignment for the amount of these goods, and also for the sum of nine hundred and nineteen 71-100 dollars, goods purchased October 14th, 1881, for which last debt a suit at law was instituted in this court March 13th, 1882, and judgment rendered July term, 1882. Defendant has no knowledge or information except what has been acquired by him as assignee since his appointment. Pursuant to the agreement indorsed on the declaration, defendant has certificate number 1898 for seven hundred and ninety-two 15-100 dollars, issued by the Planters' Loan and Savings Bank, with interest at five per cent. This sum is claimed by Frederick Damish, one of the preferred creditors under the deed of assignment, whose debt has not been paid from the assets passing thereunder. In due course of mail a letter from Augusta reaches Philadelphia in thirty-six hours, if mailed so as to take the first mail train and not delayed on the route.

The jury found for the plaintiffs, and judgment was entered accordingly. Defendant excepted, and assigned the following errors :

(1.) The court erred in the refusal to exclude the interrogatories of Zeigler, because the sixth cross-interrogatory is

not fully answered. [The interrogatory and answer are set out in the fifth division of the decision.]

(2). Because the court admitted testimony as to statements made by Whittendale after the assignment and after the plaintiffs had seen the goods in the possession of the assignee.

(3). Because the court admitted in evidence the deed made from Whittendale to Hardeman on November 29. 1881, and the deed from Hardeman to Whittendale, trustee, of the same date.—Defendant's counsel objected to these deeds as irrelevant, being acts between other parties and not connected with the plaintiffs or the sale of their goods.

(4). Because the court admitted a deed from Whittendale, trustee, to Bligh, dated June 13, 1882, and covering the same property as the deeds stated just above.

(5). Because the court admitted evidence of sales of other goods made by Whittendale to one White after the giving and acceptance of the order for these goods, such sale being for eighteen per cent. below New York cost.— Defendant's counsel objected to this evidence on the ground that only actual fraud mixed with deceit and corruption at the date of the giving of the order would prevent the title from passing by the sale, and because plaintiffs had no knowledge of these facts until after the assignment.

(6). Because the assignee had no right to question the acts of Whittendale before the assignment, and the plaintiffs could not, by so doing, defeat his title, in an. action against him personally, by showing Whittendale's transactions with others to be fraudulent against plaintiffs as creditors, they claiming title only in this action, and not asserting their rights as creditors.

Frank H. Miller; Foster & Lamar, for plaintiff in error.

v 70-33

J. S. & W. T. Davidson, for defendants.

Hall, Justice.

1. All the questions made in this case depend upon the interpretation to be placed on Code, §§2633, 2634, which provide that fraud, by which the consent of a party has been obtained to a contract of sale, voids the sale, which fraud consists in a misrepresentation made by the one party with a design to deceive, or which does actually deceive the other; and in the latter case, such misrepresentation voids the sale, though the party making it was not aware that his statement was false. It is not indispensable that the misstatement should be by words; it may be by acts as well, or by any artifice designed to mislead; but it is requisite that the misrepresentation should be acted upon, in order to have this effect. The precise question presented for our determination is whether these misrepresentations must have been known to the party and have induced him to make a sale which, without them, he would not have made; in other words, whether they must have been made prior to or at the time of the contract? The words of the Code, it seems to us, *ex vi termini*, compel an affirmative answer to this question. The " consent " of a party must have been " obtained " to the contracts of sale by means of the fraud. Again, the misrepresentations must have been made to the party with a design to deceive, or he must have been actually misled by them, and as if to leave no doubt upon the subject, it is stated that a misrepresentation not acted on is no ground for annulling a contract.

2. If this be so, it follows, that testimony offered in an action of trover to recover property, in which it was alleged that the plaintiff was induced to sell and deliver by the fraud of the defendant, of transactions by the defendant of a fraudulent character, with other parties than the plaintiffs and with whom the plaintiffs had no connection, and of

which it is not shown that they had knowledge, is irrelevant to the issues made in the case, and was improperly admitted, when objection was made thereto by the defendant in the action, who, in this instance, was not the original purchaser of the goods from the plaintiffs, but who held under the purchaser as assignee for his creditors, including the plaintiffs themselves. This assignee and the creditors whom he represented, were not shown to have knowledge of any fraud which would vitiate the sale, if any in fact existed; there was no connection between him and the parties to the transactions, between the assignor and Hardeman, or between him and Hardeman and the assignor's wife, nor between him and White, to whom it seems the assignor sold goods at an under-value for the purpose of raising money for fraudulent purposes, with a covinous intent, as was insisted; nor had the plaintiffs the slightest knowledge of these facts when they made the sale to the assignor, and consequently did not act upon them in making it. The same considerations apply with full force to the transactions from the assignor's books, which were admitted in evidence over objection.

3. The declarations of the assignor, made after the execution of the deed of assignment, were clearly inadmissible in a suit brought for the purpose of annulling the assignment or of recovering property embraced in the deed, because such declarations did not accompany the making of the deed, and were not so nearly connected with it in point of time as to be deemed part of the *res gestæ*. Code, §3773. Nor were they made in disparagement of the assignor's title while he was in possession of the property, nor in favor of his title while thus in possession to prove adverse possession. *Ib.* 3774. Nor was there the slightest evidence to show that the assignor and assignee were in collusion, or that a conspiracy existed between them. *Ib.*, 3775. "It is laid down as an established rule of evidence," says Burill (assignments §404), "that declarations made by a person under whom the party claims after the de-

clarant has parted with his right, are utterly inadmissible to affect any one claiming under him. The acts and declarations of the assignor, however, have in some instances been admitted as binding upon the assignee. Declarations made at the time of executing the assignment are thus admissible as part of the *res gestœ*, and it has been held that the declarations of the assignor, while he was in possession of the assigned property, were competent evidence. It has also been thought that the admissions of the assignor, after the assignment was completed, were admissible, on the theory that the assignee is the representative and agent of the assignor. This doctrine, however, is not sustained by principle or authority. There is no identity of interest between an insolvent assignor in trust for his creditors and his assignee. The latter holds primarily for the creditors and for those in hostility to the assignor. He does not represent merely or primarily the assignor, nor hold chiefly for his interest and benefit, but rather for the creditors of the assignor, and is accountable in the first place to them. In order to make the declarations of the assignor, after the assignment, competent evidence, it must be shown that the assignor and assignee are combined in a common conspiracy to defraud the assignor's creditors, and this common purpose must be established by evidence other than the declarations themselves."

This extract is deemed as brief, comprehensive, and accurate a statement of the law as can be found, and is well supported by the authorities cited. For a full discussion of this question, see the able and exhaustive opinion of Woodruff, J., in Cuyler *vs.* McCartney, 40 N. Y. R., 221, and also Caldwell *vs.* Williams, 1 Ind., 405.

4. The suit was originally brought against the defendant as assignee; it was subsequently converted by an amendment into a suit against the defendant as an individual. After this was done, a motion was made to reject testimony taken while the suit was in its original form. The motion was overruled, and the propriety of the decision will

depend to some extent upon the fact of this amendment having so changed the suit as to make it a new and distinct cause of action, or one between new and distinct parties (Code §3380), and upon the character of the issue tendered by the defence set up. While it is at least questionable if the amendment did introduce a new and distinct party defendant from the one originally proceeded against (64 *Ga.*, 519), yet the defendant, after the amendment was made, insisted upon his defence, to the effect that he held the property sued for as assignee for Whittendale's creditors, including the plaintiff, and holding in that character, he was not liable to this action at law, or at all events, not unless these plaintiffs should elect either to claim solely under their action or should pursue their rights under the assignment; so that it is apparent that the evidence objected to bore directly upon the issue which the defendant himself tendered; and from this it follows that, so far as it was otherwise unobjectionable under the rulings in this case, it should have been admitted.

5. George J. Zeigler, one of these plaintiffs, was examined by commission; and before an announcement was made the defendant moved to dismiss and remand for re examination of the witness the entire deposition, upon the ground that the witness had failed to answer the sixth cross-interrogatory; which question and answer is as follows:

Sixth cross: " Is this writ intended by you as renouncing all benefit as a creditor, under the deed of assignment aforesaid; or, in other words, if you fail to recover in this action the goods themselves, do you still claim to be a creditor of Whittendale to the amount of this sale, and that he is liable? Define your understanding of your claim under this action, and state particularly upon what ground you claim the right of ownership of these goods."

Sixth answer: " This is a question of law, and we leave our rights to be asserted by our counsel and determined by the court. We regard the reception of these goods by C. Whittendale as a fraud, and such a fraud as gave him

or his representatives, wherever they may be, no title to them ; and should we be wrong in this as a matter of law, our counsel will do the next best thing for us in the matter, whatever this may be."

Which motion was overruled by the court. Whether or not the answer evades the question, or the witness is interrogated as to his intention in bringing this suit, and is directly asked whether it is his purpose to rely upon the suit or to claim under the assignment, or whether it is a response to the question to reply that the purpose, as to the matter inquired about, is a question of law, which he proposes to leave to the determination of his counsel, in our view, is quite immaterial. If there was fraud in the contract of sale, the vendor might either " affirm and enforce it," or he might "rescind it." He might "sue in *assumpsit* for the price, and this would affirm the contract," or he might " sue in trover for the goods or their value, and this disaffirms it. But in the meantime, and until he elects, if his vendor transfer the goods in whole or in part, whether the transfer be of the general or of a special property in them, to an innocent third person, for a valuable consideration, the rights of the original vendor will be subordinate to those of such innocent third person." Benjamin on Sales, 3 American ed., §433, and authorities cited. So a creditor cannot be permitted both to assail and claim under an assignment; one or the other of these alternatives he must take. His election should be made before he commences proceedings, and he should not be permitted to await the result of his suit in order to make his election. This would be unfair to others claiming under the assignment. In this case, he has elected to annul the sale by bringing the action of trover, and the cross question which it is claimed he has failed to answer, was not pertinent or proper.

As to the portion of the answer which characterizes the conduct of the assignor, that is open to objection,

which we need not indicate more particularly, but which will not fail to arrest the attention of the counsel.

6. The other questions made in this record are determined by the judgment of this court just delivered, in the case of *Whittendale vs. Dixon & Brothers.*

Judgment reversed.