### THOMPSON *v.* FIRST STATE BANK *et al.*

1. The words "without recourse" have no fixed legal significance when employed in the assignment of instruments other than negotiable promissory notes and bills of exchange; and therefore the assignment of a judgment by the plaintiff passes to the assignee the title to it with all its resulting incidents, including the right to stand in the creditor's place as regards the means of its collection and enforcement, together with any incidental rights or advantages existing at the time, notwithstanding the fact that in the written assignment of the judgment such assignment is stated to be "without recourse."

2. An assignment of a judgment recovered by the payee upon one or more of a series of notes given for the purchase-money of land, which is held by the maker of such notes under bond for titles, does not divest the judg-

ment of the lien as for the purchase-money debt; on the contrary, passes to the assignee this special lien as one of its incidents, which he may set up against the assignor upon the distribution of a fund arising from the sale of such land under a judgment afterwards obtained by him upon those notes of the series which he retained. It would be otherwise had the notes themselves been assigned without recourse before the judgment was rendered.

Argued October 19, — Decided November 27, 1897.

Money rule. Before Judge Sheffield. Terrell superior court. November term, 1896.

Upon a rule against the sheriff to distribute money arising from the sale of certain lands levied on and sold under an execution in favor of the First State Bank against Samuel N. Thompson, a portion of the fund was claimed by W. N. Thompson, under two executions against the defendant in favor of said bank, which had been transferred and assigned to him. The case was submitted to the judge without a jury, upon an agreed statement of facts, from which the following appeared : The lands from the sale of which the funds in controversy arose were held by the defendant in fi. fa., under a bond for title from the First State Bank, in which bond it was stipulated that the bank would make a title to the lands on payment of a note for $2,300 principal, and ten interest coupon notes thereto attached, for $92 each, payable semiannually, and that the failure to pay any one of the coupons would make the entire amount due. The two executions of W. N. Thompson were issued on judgments based on some of the interest coupon notes. One of these executions was issued December 3, 1894, upon a judgment for $92 principal, besides interest and costs, obtained in a justice's court in November, 1894. The other was issued December 31, 1894, upon a judgment for $184 principal, besides interest and costs, obtained from the county court December 17, 1894. Each of them was duly entered on the general execution-docket. Upon the first was an entry of levy, December 3, 1894, on lot of land 155; upon the other was an entry of levy, April 8, 1895, on lots of land 155 and 156. Upon each was written a transfer as follows: "For value received I hereby transfer and assign this execution, and the judgment on which it is based, to W. N. Thomp-

son, without recourse on plaintiff. May 7, 1895. E. J. Hart, plff's att'y." The execution under which the bank claimed the fund was for $2,300 principal, and $147.15 interest to judgment, besides costs, and was issued December 1, 1896, upon a judgment obtained in the superior court November 18, 1895. It was duly entered upon the execution docket. After obtaining this judgment the bank filed, and had duly recorded in the clerk's office, a deed to the defendant in terms of the statute, and had its execution levied, December 1, 1896, upon lots of land 155 and 156 and the east half of lot 169. From the sale under this levy the fund in the hands of the sheriff arose, the amount being $2,565. The court awarded all of the fund to the bank, and refused to allow any of it to be paid upon the execution of Thompson, and he excepted.

*James G. Parks* and *E. J. Hart*, by *Hoke Smith & H. C. Peeples*, for plaintiff in error.

*J. H. Guerry, J. A. Laing* and *J. M. Griggs,* contra.

ATKINSON, J. 1. The words *sans recours* (without recourse), so far as we can ascertain, have no exact legal significance, except when they are employed by an indorser to limit his liability upon a negotiable instrument which has been, by the act of indorsement, by him assigned to a third person. An indorsement followed by this phrase relieves the indorser of liability for the payment of such a paper in the event it is dishonored by the maker or acceptor; but in its ordinary legal significance it can not be applied to the assignor of a judgment, for the reason that he assumes no conditional responsibility for the payment of the judgment. It is true that in the assignment of a judgment the assignor impliedly warrants that the judgment is unsatisfied, that he has a legal title, and that it is a valid and subsisting obligation for the sum for which it purports to be, but there is no implied warranty of the solvency of the judgment debtor; and in the event of the failure of the assignee to realize upon the judgment, the liability of the assignor, if any, to the assignee arises not from the act of assignment, unless there be express words in the transfer to charge him, but from the breach of his warranty, and this statement serves to illustrate the proposition that the assignee has no recourse by

virtue of the judgment upon the assignor, and the use of the words "without recourse" employed in the assignment of a judgment could only have the effect to negative the liability of the assignor to the assignee for damages resulting from the breach of this implied warranty. In speaking of the title acquired by an assignee under an assignment of a judgment, Mr. Black (2 Black on Judgments, § 948) says, "The cases generally agree that the assignment carries with it the debt or claim on which the judgment was based, and the right to stand in the creditor's place as regards the means of its collection and enforcement, together with any incidental rights or advantages existing at the time." If this be true, and such be the general import of an ordinary assignment of a judgment, the words "without recourse" could not have the effect to destroy any of the incidental rights or advantages existing at the time. It is. not one of the incidents of such an assignment that the assignee should have recourse upon the judgment creditor, and hence the use of such words could not have the effect to divest. the lien of a judgment upon property subject to sale in satisfaction of it. When we come, therefore, to ascertain the meaning of the words "without recourse," as employed by the parties in the assignment of this judgment, we conclude that the only legal effect produced by the use of them is to relieve the assignor from liability to the assignee on account of the breach of either of the several implied warranties to which we have heretofore adverted.

2. If this be the only significance which attaches to the use of the words "without recourse," and the assignee of the judgment takes it with all the incidents and advantages resulting from it, it follows, as of course, that where a judgment recovered by the payee upon one of a series of notes given for the purchase-money of land, which is held by the maker of such notes under bond for titles, is assigned, the assignment, even though stated to be "without recourse," does not divest the judgment of the lien as for the purchase-money debt. On the contrary, the assignment passes to the assignee this special lien as one of its incidents, which he may set up against the assignor upon the distribution of a fund arising from the sale of

the land under a judgment afterwards obtained by the assignor upon those notes of the series to which he had retained the title. It is now well settled in this State, that had the notes which were the foundation of the judgment been assigned without recourse before the judgment, the assignee would have taken them without either a lien upon the land or liability of the assignor to him. An assignment of the notes "without recourse" would have remitted the assignee to a suit against the maker alone. Assignment to the third person would have destroyed their character as purchase-money notes and left them unsecured. We conclude, therefore, that the court, under the facts of the present case, erred in declining to permit the assignee of this judgment to be paid out of the fund arising from the sale of the land levied upon, and which it held for the purpose of distribution.

*Judgment reversed. All the Justices concurring.*