24098. HERRINGTON, executor, *v.* CITY OF DUBLIN.

DECIDED FEBRUARY 9, 1935. REHEARING DENIED MARCH 1, 1935.

*Williams & Williams, R. Earl Camp,* for plaintiff.
*C. C. Crockett, W. W. Larsen Jr.,* for defendant.

GUERRY, J. L. B. Herrington, executor of the estate of H. S. Herrington, deceased, brought an action against the City of Dublin

and alleged that during the years 1925 and 1926 the City of Dublin issued certain tax fi. fas. against T. B. Hicks and T. B. Hicks, agent, which were regularly and legally levied by legal authorities of said city,—two in 1925 and two in 1926; that the property of said Hicks was advertised and sold thereunder, and the city became the purchaser at the sale, at a price sufficient to satisfy the executions; that thereafter on May 15, 1928, and after the time limit for the redemption of the property by T. B. Hicks had expired, the city, without the knowledge of the plaintiff, knowingly and fraudulently caused four other tax executions, purporting to represent taxes for the years 1925 and 1926, to issue against said T. B Hicks, representing the same dates and the same amounts as the original executions above described, and transferred the same to petitioner at their full face value, without recourse; that by reason of the fact that T. B. Hicks constantly sought indulgence from petitioner for more time in which to pay said fraudulent fi. fas. so transferred, petitioner had no knowledge or cause to suspect until June 7, 1933, that such fi. fas. were fraudulent, at which time he had a levy made upon property of T. B. Hicks and T. B. Hicks, agent, and a bill in equity was filed by Hicks and sustained, setting up that said fi. fas. had been settled and paid in full by reason of the sales theretofore made of said property by the city for taxes; that plaintiff had no knowledge of such fi. fas. or sales until that time; that the city had constantly promised T. B. Hicks that it would reconvey said property to him, and continued to make such promise, and that by reason of that fact T. B. Hicks promised to pay petitioner; that such promises lulled him into a sense of security, and he had no reason to suspect the validity of such executions in the hands of Herrington; that said city refuses to either reconvey the property it has bought under said sales above described or to restore to your petitioner the money fraudulently procured from him to which he is entitled in equity and good conscience, after having knowingly perpetrated such a fraud upon him. By amendment the plaintiff prays for a judgment "by way of action for money had and received." A general demurrer to this petition was sustained.

■ Defendant in error insists that the proceeding was an action for money had and received, which showed that the plaintiff had waived the tort and sued in contract, and that as the transfer of

the executions was made without recourse, the plaintiff was prevented from holding the city liable under contract. 2. That the action was barred by the statute of limitations, as no action was brought within four years from May 15, 1928, the time it is claimed by the defendant that the right of action accrued.

It is stated in the bill of exceptions that the general demurrer was sustained on the authority of *Bates* v. *Forsyth*, 64 *Ga.* 232, and same case, 69 *Ga.* 365, "that in as much as tax executions were transferred without recourse, plaintiff's only right of action would be for false representation or deceit, and that, the same being an action based on a tort, was not assignable so as to give the plaintiff a right of action for money had and received." It will be noted that in the *Bates* case in the 69 *Ga.*, supra, Bates & Co. sued Hawkins and garnished Mitchell. Mitchell answered not indebted, and this answer was traversed. Mitchell was indebted to a firm, Colclough, Harkins & Glover, and paid the firm by assigning and transferring to them certain fi. fas. owned by him which were due and collectable, the transfer containing these words: "without any liability on my part whatever, they paying and settling all fees and costs due on said fi. fas." These fi. fas. were in the hands of an attorney for collection and he had collected a named sum on them, which he refused to pay over to the firm, the transferees, but claimed.that Mitchell was due him this amount as fees. At the direction of Mitchell, the transferees sued the attorney and failed to recover. The firm was then dissolved and the claim of the firm fell to Harkins, and hence it was claimed that Mitchell, the garnishee, owed Harkins and should be held to respond to plaintiff's garnishment. In the case as reported in 64 *Ga.* it was held that the right of action against Mitchell was an action in deceit, which, being a tort, was not assignable. In 69 *Ga.* it was said that a fi. fa. endorsed without recourse would give to the assignee no right based on the transfer against the assignor because of a failure to realize the money from the debtor. His right of action, if any, would be in deceit, which is not assignable, and, "the transfer of fi. fas. being to a firm," one of its members, though the real creditor, would have no right to bring action in deceit in his own name. It will thus be seen that the right of action for deceit, if there was any, was in the firm, the alleged false representation being made to it, and its assignee could not maintain an action thereon. Had

the firm been the plaintiff in fi. fa. a different result might have happened. In the present case Herrington is the party to whom the alleged false statements were made and Herrington brings this action. A fi. fa. endorsed to Herrington without recourse gives to him no right of action against the transferor because of his failure to compel the debtor to respond; such an action being on contract is governed by the limitation "without recourse." A different case is presented however where a fi. fa., although transferred without recourse, is a duplicate fi. fa. issued and delivered in fraud and with knowledge on the issuer's part that collection had already been made thereon and that the transferee would be unable to collect, because the transferor had already made collection. It is also true that though fraud and deceit are alleged, the principle of money had and received is involved and the plaintiff may waive the tort and sue on the assumpsit or quasi-implied contract arising because of the fraud. This by his prayer the plaintiff elected to do. In *Martin* v. *Newberry,* 169 *Ga.* 676 (151 S. E. 380), it was said: "Where a count of the petition alleges a transaction in the nature of both contract and tort, and prays to recover a stated sum with interest, 'for money had and received,' this amounts to a waiver of the tort and an election to sue on the implied contract of the defendant to repay the amount to the plaintiff." This being an action in the nature of money had and received, did it, because the fi. fa. was endorsed to the plaintiff "without recourse," relieve the defendant from liability thereon? In *McCay* v. *Barber,* 37 *Ga.* 423, it was said: "On suit brought by B to recover the money paid for the coupons, the court charged the jury that if they found that the coupons were void ab initio, the plaintiff had a right to recover." The Supreme Court approved this charge. Quoting from the opinion: "The defendant having received the money of the plaintiff without giving any valuable consideration therefor is not, in equity and good conscience entitled to keep it." In *Culbreath* v. *Culbreath,* 7 *Ga.* 64 (50 Am. D. 375), the court, quoting Lord Mansfield, said: "If the defendant be under *an obligation* from the ties of *natural justice* to refund, the law implies a debt, and gives the action founded on the equity of the plaintiff's case as if it were upon a contract." Quoting further: "If there be justice in the plaintiff's demand and injustice or unconscientiousness in defendant's withholding it, the action lies, . . The law will

compel him to pay." In the *Culbreath* case, supra, which was a suit to recover money paid, with a knowledge of all the facts, through a mistake of law, Judge Nisbet said: "If it were not so— if authorities were balanced, we feel justified in kicking the beam and ruling according to that naked and changeless equity which forbids that one man should retain the money of his neighbor, for which he paid nothing, and for which his neighbor received nothing, an equity which is natural, which savages understand, which cultivated reason approves, and which Christianity not only sanctions, but in a thousand forms has ordained." The phrase "without recourse" may and does relieve the indorser from liability to indorsee as to the solvency of the defendant in fi. fa., or from an obligation to pay the indorsee in the event he fails to collect by levy or otherwise from the defendant in fi. fa. It does not, however, relieve the indorser of liability for the lack of genuineness of the instrument assigned, or for the transfer of a forged or fraudulent instrument. In *Thompson* v. *First State Bank,* 102 *Ga.* 696 (29 S. E. 610), it was said that this phrase relieves the indorser from liability for the payment of such paper in the event it is dishonored by the maker or acceptor. In Words and Phrases, it is said that the indorser without recourse warrants by implication that he is the lawful holder and has a just and valid title to the instrument, and that the instrument is genuine and not forged or fictitious. See also Dumont *v.* Williamson, 18 Ohio St. 515; New York Security & Trust Co. *v.* Lombard, 65 Fed. 271. The plaintiff's right in such an action is founded on a "natural equity" which is not affected by the limitation "without recourse." An action for money had and received will lie where there is no actual fraud. It will all the more lie when the defendant is in possession of money which ex æquo et bono, because of fraud, belongs to the plaintiff. *Rhodes Furniture Co.* v. *Jenkins,* 2 *Ga. App.* 475 (58 S. E. 897); *Knight* v. *Roberts,* 17 *Ga. App.* 527 (87 S. E. 809). It is a "quasi contractual relation." *Knight* v. *Forbes,* 19 *Ga. App.* 320 (91 S. E. 445). Under the allegations of the petition the plaintiff's right was not affected by the use of the term "without recourse."

■ It is contended that the transfer of the fi. fas. having been made on May 15, 1928, and suit not having been filed until October, 1933, the action for money had and received, being an action

on an implied contract, was barred by the statute of limitations. If this were an ordinary action in assumpsit to pay for goods sold, labor accepted, and the like, the statute would apply. The very gist of this action is that the defendant transferred to the plaintiff an instrument which was worthless and fictitious, and received the plaintiff's money, which, according to the allegations of the petition, he was not entitled to keep, and thereby violated a "natural equity." The implied contract which arises in favor of the plaintiff thereby is not affected by the statute of limitations until he has notice of the violation by the defendant of this natural equity. Under the allegations of the petition this notice was not had until June, 1933.

The court erred in sustaining the general demurrer.

*Judgment reversed. MacIntyre, J., concurs specially. Broyles, C. J., dissents.*

### ON MOTION FOR REHEARING.

GUERRY, J. This court is not unmindful of the fact that this suit was brought by the executor of the transferee of the tax fi. fas. Neither are we unmindful of the ruling made in *Alexander v. Dean,* 157 *Ga.* 280 (121 S. E. 238), nor of code section 4421, and that this section is applicable to actions pending at the time of the death of one of the parties. A representative of a deceased tortfeasor may not be sued in an action of trover, where the action is brought after the death of the testator, "yet the law would afford the plaintiff some form of action." "No mischief is done, for, so far as the cause of action does not arise ex delicto, or ex maleficio of the testator, but is founded in a duty which the testator owes the plaintiff upon principles of civil obligation, another form of action may be brought, as an action for money had and received." *Alexander v. Dean,* supra. As was said in *Citizens & Southern National Bank v. Hendricks,* 176 *Ga.* 692 (168 S. E. 313, 87 A. L. R. 230), "The provisions of code section 4421 do not apply to causes of action, but merely to actions." This code section does abate the right of actions in trover or tort by the death of either party, but does not abate an action already started. "It would be otherwise if the plaintiff, waiving the tort, had sued as for money had and received." *Citizens &c. Bank v. Hendricks,* supra. That is exactly what was done in the present case. The plaintiff elected to sue for money had and received. An action for money had and

received will lie on an implied contract or assumpsit, or it will lie whenever one party has money or other property of a definite value which ex æquo et bono belongs to another. The fact that an action for deceit would lie does not prevent the plaintiff from planting his case on the "natural equity" which the law recognizes. "Mere breach of contract does not constitute a fraud which will sustain an action in tort for fraud and deceit, nor does a fraud necessarily give rise to an implied contract which will sustain an action ex contractu. But the same act or transaction may constitute both a breach of contract and an actionable fraud, in which case the injured party may sue either in contract or in tort; and there are cases where from the circumstances constituting the fraud the law will imply a contract, and authorize an action either in tort or on the implied contract, the tort, in case the action is brought in contract, being waived." 1 C. J. 1020.

Viewed in this light, it becomes immaterial whether the transfer or assignment of the judgment was made "without recourse." If it was fraudulently made and one party has money which under the principles of natural justice belongs to another, a right or cause of action exists for money had and received. The writing of the words "without recourse" was only a part of the transaction which gave rise to the natural equity to repay the money implied by law, and, as already shown, it can have no effect on the plaintiff's right to recover in this case. If the suit were on the fi. fas. a different question might have been presented, under the ruling made in *Thompson* v. *First State Bank,* 102 *Ga.* 696 (29 S. E. 610). However, in the *Thompson* case, which was the assignment of a judgment without recourse, no question of fraud, through forgery or fictitious issuance, was involved and what was said therein does not mean that any person or municipality may issue a duplicate fi. fa. against a taxpayer, when it has prior to that time already issued the same fi. fa. and collected the full amount due thereon, and then sell such duplicate fi. fa. which is worthless and fictitious, and protect itself by a transfer without recourse. The action against the municipality here is not an action on the fi. fa. and its transfer, but is an action that arises out of the natural equity of the plaintiff's case.

The allegation with respect to the reasons why plaintiff and his testator did not discover the alleged fraud are sufficient to with-

stand the demurrer with respect to the statute of limitations.

With regard to the statute of limitations, if money is procured by fraud and plaintiff waives the tort and sues in contract, the statute of limitations will commence to run from the time the fraud was discovered, in the same manner as if the action was in tort. Penobscot R. Co. *v.* Mayo, 68 Me. 470. *Rehearing denied.*

MacINTYRE, J., concurring specially. The action of assumpsit for money had and received is comprehensive in its scope and is favored under the law. Although the action is in reality one at law the right to recover is equitable in its nature. Construing this action in its entirety so as to uphold the right of the plaintiff's cause of action, no demurrer for duplicity having been filed to the petition, I do not think this case is founded upon the idea of a contract, for the plaintiff received no consideration, but is one founded purely "in the equity of the plaintiff's case, as if it were upon contract." *Culbreath* v. *Culbreath,* supra. This case is somewhat different from those classes of cases in which services are rendered and there arises an implied promise to pay, for in those cases there is a consideration, the services rendered, and the implied promise to pay completes the contract. In the instant case money was paid to the defendant by reason of its fraud and there existed no consideration between the parties. The defendant, therefore, would be under an *obligation* from the ties of *natural justice* to refund the money to the plaintiff, not because of a contract but purely because of the "equity of the plaintiff's case," from which the law raises a debt. The endorsing of the fi. fa. "without recourse," was only a part of one of the acts that went to make up the fraud on account of which the defendant received the money to which he was not justly and legally entitled and which he ought not in good conscience retain. Such endorsement was only a part of the transaction which goes to make up the *obligation,* which gives rise to the *equity,* and therefore could have no effect upon the action as I construe it. It would then follow that the statute of limitations would not begin to run against the obligation of the defendant until plaintiff either knew or could by the exercise of ordinary diligence have discovered the fraud or facts giving rise to the obligation. For this reason I am of the opinion that the plaintiff is entitled to proceed and the court erred in dismissing his petition on demurrer.

BROYLES, C. J., dissenting. In my opinion the general demurrer to the petition was properly sustained. As the plaintiff elected to sue for money had and received, it was an action on an implied contract; and, the transfer of the tax executions having been made by the defendant "without recourse," all implied warranties were eliminated, and a recovery could not be had in the suit brought. Furthermore, I think that under the facts of the case as shown by the pleadings the action was barred by the statute of limitations.