494

25665. HERRINGTON, executor, v. CITY OF DUBLIN.

DECIDED NOVEMBER 7, 1936.

*R. Earl Camp*, for plaintiff.

*C. C. Crockett, W. W. Larsen Jr.*, for defendant.

SUTTON, J. L. B. Herrington as executor of the estate of H. S. Herrington, deceased, brought against the City of Dublin an action for money had and received. The allegations of the petition and other pleadings in the case were set forth in *Herrington* v. *Dublin*, 50 *Ga. App.* 769 (179 S. E. 845), where the judgment sustaining a demurrer to the petition was reversed by this court. After the case was remanded, the City of Dublin, on October 26, 1933, filed an answer, and on October 29, 1935, filed an amendment setting up, among other things, a special plea that the plaintiff's action was barred by the statute of limitations. When the case came on for a hearing, by agreement of the parties it was submitted to the judge on the law and the facts without the intervention of a jury. Judgment was rendered for the defendant, and the plaintiff filed a motion for new trial. The exception is to the overruling of that motion.

While the former decision of this court stated the law of the case as to the allegations of the petition, a careful examination of the record shows that the proof did not support these allegations, and it can not be said that the purchaser of the alleged "bogus" tax executions was misled or deceived by the City of Dublin or by any one. Briefly summarized, the evidence shows that in 1925 and 1926, tax executions were issued against T. B. Hicks and against him as agent for his wife, and that they were levied on certain property which thereafter was sold and was bought in by the city and afterwards deeds were properly made to the city; that such deeds, together with the executions, were properly recorded, but Hicks was allowed to remain in possession; that the city subsequently instructed the city attorney to collect the amount of the taxes or obtain possession of the property; that Hicks, desiring to keep the property, appeared by himself or through another

before the city council to be relieved of the ten per cent. penalty for non-payment, and to be allowed to pay the principal, interest, and costs, and to have the former status restored. The minutes disclosed that the matter was referred to the finance committee and the city attorney with power to act. The plan was agreed on, and Hicks arranged with A. N. Silas, an attorney and broker dealing in tax executions, to raise the money and to have the executions transferred as evidence of his debt. It was testified by the city attorney, without objection: "Mr. Silas stated to me that he could not use the old fi. fas., because they had the entries of levy and sale, and, after they went to Atlanta and Mr. Herrington looked them over, that he wouldn't take them." It was testified by one who was office manager of Herrington at the time, that Silas, as an independent broker, frequently procured Herrington to buy tax fi. fas. from the City of Dublin for the benefit of Silas's clients, and that on that occasion, as at all times, Silas was not the agent of Herrington and was paid no commission, such remuneration being derived from the borrower. It further appears from the evidence that Silas gave to the city a draft on Herrington for an amount which covered purchases of a number of city tax executions which were attached to the draft, and that the draft was paid by Herrington; that among the executions were the "bogus" executions involved in the present controversy. These "bogus" executions, though purporting to have been issued by a former city clerk as of the date of the original executions against Hicks, though in different amounts, were, according to the evidence, not in fact in his handwriting, and the testimony of witnesses familiar with his handwriting and that of Silas was that they were not written or signed by the clerk whose name they bore, but by Silas. It was these executions that the petition alleged Herrington did not know were fraudulent until June 7, 1933, though they were issued on May 15, 1928. It was testified by the city marshal that he transferred them on behalf of the city and "without recourse," but that he was in ignorance of the fact that the signature of the former city clerk was forged. Whatever the nature of these executions, it was shown by the evidence that Hicks recognized them as valid and binding upon him, although the lien on the property had already been foreclosed, and that, when Herrington sought to collect his debt from Hicks in 1929, Hicks stated that he would

pay the amount, but asked for an extension of time. Hicks died in 1932, while still indebted to Herrington for the amount advanced under the agreement. As previously stated, Hicks was never ousted from the property in his lifetime, and he returned it in his own name for taxation. The taxes on such returns were unpaid, and also state and county taxes accrued. After the receipt of the money for taxes in May, 1928, the city returned to Hicks the tax deed and original executions, stood ready to reconvey to him or execute a quitclaim deed, but was not called on by Hicks to do so, and the matter was neglected, the city making no claim whatever to the property. Being in possession and having his taxes paid, Hicks had a complete equitable title to the land, was estopped to deny the arrangement with the city and his liability for the amount due Herrington, and, because of the indulgence granted by Herrington to him in 1929 on his statement that he would treat the new fi. fas. as valid and binding against him, he was estopped to set up their invalidity. Likewise the city, having foreclosed the original lien, had no recourse against Hicks, and in fact was satisfied with the situation. Herrington, however, brought no action against Hicks in his lifetime. Hicks died insolvent in 1932, having in the meantime disposed of part of his property, and after his death certain property was set apart as a year's support for his wife. In October, 1933, Herrington instituted the present suit.

It is clear from the evidence that at the time of the purchase of the "bogus" executions Herrington knew that the lien of the city had been foreclosed. That fact was made known to him when the executions with all entries thereon were submitted to him in Atlanta. Therefore he knew that he could not be provided with any new executions, whatever their nature, that would of themselves enable him to subject the property of Hicks to the satisfaction of his debt. Under such circumstances he bought at his peril, and the act of the city in forwarding for collection a draft drawn by Silas, and to which the "bogus" executions had been attached by Silas, was not such fraud on the part of the city as could be said to have misled or deceived him. If he was not misled by the alleged misrepresentations of the city, they constitute no cause of action. *Wright* v. *Zeigler,* 70 *Ga.* 501; *Harrison* v. *Powers,* 76 *Ga.* 218, 219. Under the law and the evidence the court did not

err in rendering judgment for the City of Dublin, and in overruling the motion for new trial.

Moreover, the plaintiff was barred by the statute of limitations, as set up in the answer of the defendant. When this case was previously before this court and the judgment was reversed on the ground that the court erred in sustaining the general demurrer, the petition alleged that the plaintiff did not become aware of the invalidity of the "bogus" executions until June 7, 1933, after Hicks' death, when he caused a levy to be made on the property, and was enjoined from proceeding, because it appeared in a proceeding filed by the wife of Hicks that the original lien had been foreclosed by the fi. fas. of 1925 and 1926. Under such allegations, this court ruled that the statute of limitations of four years did not begin to run until June 7, 1933, but under the evidence it is shown that Herrington knew, before he paid the draft on May 25, 1928, that the lien had been foreclosed, as shown by the entries on the original executions submitted to him in Atlanta. Therefore the time in which suit might be brought against the City of Dublin had expired before October 2, 1933, when the present action was instituted.

*Judgment affirmed. Jenkins, P. J. and Stephens, J., concur.*